Jori Quinlan
HALL BOOTH SMITH, P.C.
101 E. Front St., Ste. 402
Missoula, MT 59802
(406) 317-0070
jquinlan@hallboothsmith.com

*Attorneys for C. Bradford Black, M.D.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| JACKSON WELLS, as Personal Representative for the Estate of THOMAS E. WELLS, deceased; and JUDITH HEMPHILL, as Personal Representative for the Estate of JOYCE H. WALDER, deceased, <br><br> *Plaintiffs*, <br><br> v. <br><br> BNSF RAILWAY COMPANY, <br><br> *Defendant.* | Cause No.: CV-21-97-GF-BMM <br><br><br> **BRIEF IN SUPPORT OF NON-PARTY C. BRADFORD BLACK, M.D.'S OBJECTION AND MOTION TO QUASH TRIAL SUBPOENA ISSUED BY BNSF RAILWAY COMPANY** |

Non-Party C. Bradford Black, M.D. ("Dr. Black"), through counsel, files this brief in support of his Objection and Motion to Quash Trial Subpoena Issued by BNSF Railway Company ("BNSF").

1

## RELEVANT FACTUAL BACKGROUND

Dr. Black, a medical doctor with a pediatric specialty, helped found the Center for Asbestos Related Disease ("CARD") in 2003. Decl. C. Bradford Black ¶¶ 1-2, Jan. 26, 2024 ("Black Decl."). He was employed there as a physician and Medical Director through May 2021 and part-time as a researcher and consultant until he retired in September 2023. Black Decl. ¶ 3. During that time period, CARD screened thousands of patients for the presence of asbestos-related disease. Black Decl. ¶ 4.

Joyce Walder was one of the patients who was screened at CARD. According to Plaintiffs' Motion to Quash this same subpoena, Walder's medical records from CARD were already produced by Plaintiffs in discovery and were also obtained by BNSF directly from CARD. (Doc. 231 at 6.)

Dr. Black does not know or remember Joyce Walder ("Walder") and does not have any independent recollection of her imaging, test results, or other medical records, which he would have reviewed nearly a decade ago. Black Decl. ¶ 5. Nor does he have any independent recollection of discussing this specific patient with any other CARD providers, which again would have occurred nearly a decade ago. Black. Decl. ¶ 6. Any testimony that he might offer concerning his care of Walder would have to be based exclusively on the medical records already in the possession of the parties. Black Decl. ¶ 7.

//

According to her medical records,[1] Joyce Walder was seen at CARD for screening purposes on three occasions in 2013 and 2014. She presented on July 22, 2013, for a new patient screening with "TSS" and a spirometry was conducted. Quinlan Decl., Ex. 1-2 to 1-7. On August 14, 2013, Walder submitted forms about her incidental asbestos exposure, occupational history, and residential history in Libby to CARD and she was seen for an office visit by Family Nurse Practitioner Michelle Boltz ("FNP-C Boltz"), a mid-level provider at CARD. Quinlan Decl., Ex. 1-9 to 1-18. FNP-C Boltz documented that the spirometry yielded "[b]orderline restrictive" results and that an x-ray was "Negative." Quinlan Decl., Ex. 1-10. FNP-C Boltz ordered a follow up appointment for a CT scan "[g]iven symptoms and exposure history." *Id.*

Pursuant to FNP-C Boltz's order, a CT scan was conducted at Cabinet Peaks Medical Center on December 22, 2014. According to the initial reading by radiologist Stephen Becker, M.D., there was "[n]o diagnostic evidence for previous asbestos exposure." Quinlan Decl., Ex. 1-19.

On December 29, 2014, Walder was seen again at CARD by FNP-C Boltz,

---

[1] Plaintiffs' counsel provided the records to the undersigned for purposes of evaluating this subpoena. The Declaration of Jori Quinlan is filed herewith, with the CARD medical records for Walder attached as Exhibit 1. Decl. Jori L. Quinlan ¶ 2, Jan. 26, 2024 ("Quinlan Decl."), Ex. 1: CARD medical records for Joyce Walder.

and another spirometry was performed. In her Office Visit note, FNP-C Boltz noted the spirometry was normal and indicated that "[p]er Dr. Black," the CT showed "lamellar noncalcified pleural thickening in the mid to lower bilateral chest." Quinlan Decl., Ex. 1-27. She diagnosed pleural thickening. *Id.*

Pursuant to his usual custom, habit, and practice, Dr. Black personally reviewed the CT, reviewed Walder's records, and discussed the patient with FNP-C Boltz. Black Decl. ¶ 8. Unlike the initial reviewer, he observed pleural thickening on the CT. Black Decl. ¶ 9. Based on his evaluation, Dr. Black diagnosed Walder with pleural thickening, an asbestos-related disease. *Id.* He signed an SSA form confirming the diagnosis. Black Decl. ¶ 10; Quinlan Decl. Ex. 1-29 to 1-30.

Dr. Black had no further contact with this patient. She was not diagnosed at CARD with mesothelioma, and she was not treated at CARD for mesothelioma or any other condition. Her contact with CARD was limited to the above-described screening process reflected in the CARD records, and Dr. Black's role with the patient was limited to his December 29th review and diagnosis. Black Decl. ¶ 12; *see also, generally,* Quinlan Decl., Ex. 1.

## LEGAL STANDARD

Upon timely motion, a court must quash a subpoena that "requires disclosure of privileged or other protected matter" or that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv). This includes a subpoena that falls outside the

scope of discovery permitted by Rule 26. *Adams v. Gissell*, No. CV-20-135-BLG-SPW-TJC, 2022 WL 355758, at * 1 (D. Mont. Feb 7, 2022) (quoting *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter*, 211 F.R.D. 658, 662 (D. Kan. Jan 23, 2003)) ("'the court must examine whether a request contained in a subpoena is overly broad and seeks irrelevant information'"); *Mattel, Inc. v. Walking Mtn. Prods.*, 353 F.3d 792, 813 (9th Cir. 2003) (a subpoena seeking information that has "no bearing on this litigation" constitutes an undue burden).

To be discoverable, testimony sought by a subpoena must be relevant to a claim or defense and it must be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Relevancy is construed broadly, however, "it retains 'ultimate and necessary boundaries.'" *Vondra v. City of Billings*, No. CV-22-30-BLG-KLD, 2023 WL 6880148, at *3 (D. Mont. Oct. 18, 2023) (quoting *BNSF Ry. Co. v. Center for Asbestos Related Disease, Inc.*, No. CV 19-40-M-DLC, 2022 WL 1442854, at *3 (D. Mont. May 6, 2022)). To determine whether evidence is relevant, the 2015 committee notes to Rule 26 stress the importance of the courts conducting a proportionality analysis. *Id.* (citing *Frost v. BNSF Ry. Co.*, 218 F. Supp. 3d 1122, 1134 (D. Mont. 2016)). In considering proportionality, courts must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed

5

discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Where a request is served on a non-party, the burden of showing relevance is "stronger-than-usual." *Vondra*, 2023 WL 6880148, at *3.

## ARGUMENT

**I. Dr. Black should be protected from BNSF's demand he produce Joyce Walder's medical records.**

Pursuant to Federal Rule of Evidence 45(d)(2), Dr. Black objects to BNSF's demand that he produce Joyce Walder's medical records from CARD because he does not have possession or control over CARD's patients' records. He is no longer an employee of CARD. Moreover, Plaintiffs have already produced Walder's medical records from CARD. BNSF can pursue any additional records that are responsive to its timely discovery requests from Plaintiffs or CARD, not from Dr. Black personally.

**II. The subpoena for a trial deposition should be quashed because it exceeds the scope of Rule 26, subjects Dr. Black to an undue burden, and is intended for an improper purpose.**

    **A. The deposition should be quashed for failure to comply with Court orders.**

Plaintiffs previously moved in limine to exclude evidence relating to the CARD Clinic. (Doc. 142 at 16–17.) They argued such evidence was irrelevant because CARD Clinic never diagnosed or treated Walder for mesothelioma, the condition at issue in this case. BNSF responded that evidence relating to the CARD clinic is admissible because, as part of her screening, "she completed a survey

6

outlining her possible exposure pathways to asbestos in Lincoln County" and she was "diagnosed with an asbestos-related disease" at CARD on December 29, 2014. (Doc. 163 at 10–11.) The Court determined that "without additional context," it could not "determine that all information related to Walder's CARD Clinic visits will be inadmissible," and directed BNSF to "identify any specific CARD Clinic evidence it seeks to admit outside the presence of the jury," subject to "specific objections" by Plaintiffs. (Doc. 215 at 16.)

Now, BNSF seeks to perpetuate Dr. Black's testimony <u>for trial</u> without identifying "any specific CARD Clinic evidence it seeks to admit." *Id.* As would be required <u>at trial</u>, such identification must occur <u>prior to</u> the testimony being elicited. Otherwise, the deposition is a mere fishing expedition. The subpoena should thus be quashed for BNSF's failure to comply with the Court's order on Plaintiffs' motion in limine.

Additionally, BNSF has been aware of CARD's and Dr. Black's involvement in Walder's care throughout this case, and Dr. Black has at all times lived in Libby, Montana. Black Decl. ¶ 13. Yet BNSF never sought to depose Dr. Black or any other CARD provider during the discovery portion of this case. Black Decl. ¶ 14. Now, BNSF seeks a deposition long after the close of discovery, without showing any "good cause" to seek the late deposition. BNSF was not diligent in obtaining the specific discovery—Dr. Black's testimony—it now purports to need. The deposition

7

subpoena should be quashed on this basis alone. *Ashby v. Mortimer*, 337 F.R.D. 652, 657 (D. Idaho 2020) (citation omitted) (subpoenas for trial perpetuation depositions of treating providers after the close of discovery properly quashed absent showing of "good cause," which "'primarily considers the diligence of the party seeking'" the late deposition); *Integra Lifesciences I, Ltd. v. Merck KGaA*, 190 F.R.D. 556, 559 (S.D. Cal. 1999) (same).

> **B. Dr. Black's testimony has no bearing on this case because he lacks relevant personal knowledge as a fact witness and his testimony would be cumulative of what is in the medical records.**

By reviewing Walder's medical records from CARD, the Court has the "additional context" required to determine that Dr. Black's trial deposition subpoena should be quashed. (Doc. 215 at 16.)

First, any testimony that Dr. Black can offer would be cumulative of the information in Walder's medical records. The two reasons BNSF argued CARD evidence would be admissible at trial—Walder's statements about "possible exposure pathways to asbestos in Lincoln County" and her diagnosis on December 29, 2023, with an asbestos-related disease—are contained in the medical records the parties already have. (Doc. 163 at 10-11.) Accordingly, the subpoena would subject Dr. Black to an undue burden as he would only be used as a conduit to repeat Walder's own, admissible prior statements and the medical records' indication of her diagnosis and the date. BNSF identified no other admissible information it needs

8

in response to Plaintiffs' motion in limine on evidence about or from CARD.

Nor can Dr. Black provide any additional detail beyond what is in the records. As demonstrated by the records—which, again, BNSF already has—Dr. Black did not personally see Joyce Walder. Accordingly, he would not have discussed her health, incidental exposure, occupational, recreational, or residential history with her. He would not have discussed her symptoms with her. He would not have discussed her functional capacity with her. Black Decl. Black Decl. ¶ 9. In arriving at his diagnosis, Dr. Black would have relied on the CARD records, including the patient's visit notes by FNP-C Boltz, the spirometry results, and his own reading of the CT, which is reflected both in FNP-C Boltz's office note and the SSA form completed by Dr. Black. Black Decl. ¶ 8. Dr. Black does not remember this patient or have any other personal knowledge that would be relevant to Plaintiffs' claim against BNSF or to BNSF's defenses. Black Decl. ¶¶ 5–9.

Moreover, Dr. Black's testimony concerning the records would be irrelevant to the claims at issue in this case. CARD's clinical diagnosis of pleural thickening did not cause or contribute to Walder later developing malignant mesothelioma—a diagnosis that the parties do not dispute. Nor was her later, independent diagnosis of mesothelioma based on CARD's clinical diagnosis of pleural thickening. A diagnosis of mesothelioma does not require a prior diagnosis of a non-malignant asbestos-related disease like pleural thickening. Thus, Dr. Black has no information

relevant to the Plaintiffs' claims or BNSF's defenses in this matter

Finally, to the extent BNSF may seek testimony about CARD itself, Dr. Black has been subpoenaed in his personal capacity and is retired. BNSF has not sought a deposition of a corporate representative of CARD, and CARD has not authorized Dr. Black to represent the corporation regarding CARD's practices, finances, procedures, or other employees, even if such evidence were relevant and admissible. If BNSF were seeking such evidence, it has subpoenaed the wrong non-party.

Dr. Black's testimony would be cumulative of the information already available to both parties through Walder's medical records, which is irrelevant to this case anyway. Under the proportionality requirement of Rule 26(b)(1) of the Federal Rules of Civil Procedure, the parties have access to the sought information from another source, Dr. Black's testimony has no importance for resolving the issues in this suit, and the burden and expense of the proposed trial deposition outweighs its likely benefit.

    **C.**    **Dr. Black cannot offer expert opinions except those developed in the course of his own treatment of the patient and disclosed in the medical records.**

As a treating provider, Dr. Black can only offer any opinions he developed during the course of screening Joyce Walder on December 29, 2014. *Mears v. Safeco Ins. Co. of Ill.*, 888 F. Supp. 2d 1048, 1055 (D. Mont. 2012), *aff'd*, 572 F. App'x 503 (9th Cir. 2014) (citing *Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817,

826 (9th Cir. 2011)). Since no discovery deposition was taken in this case, this means any trial testimony must be limited to those opinions disclosed in his medical records. *Id.* (citing *Meyers v. Nat'l R.R. Passenger Corp. (Amtrak)*, 619 F.3d 729, 735 (7th Cir. 2010)).

There is no evidence in the medical records that Dr. Black considered any of the issues relevant to this suit, such as the likelihood the patient would develop mesothelioma or what caused her mesothelioma. Accordingly, although Dr. Black has extensive experience diagnosing and treating patients with asbestos-related diseases, including mesothelioma, he could not offer any opinion testimony beyond the information already available to the parties in Walder's medical records.

> **D. BNSF appears to seek Dr. Black's deposition for an improper purpose, such as to cause confusion, mislead the jury, or unfairly prejudice Plaintiffs, or to harass Dr. Black and CARD when they are not in a position to defend themselves.**

Defendant and subpoenaing party BNSF, as relator, recently prosecuted a False Claims Act ("FCA") case against CARD concerning CARD's implementation of the Affordable Care Act's Early Detection Screening and Pilot Program for asbestos-related disease. In that case, BNSF alleged CARD's implementation of the program resulted in well over 1,700 "false claims" for Medicare coverage since 2011. In addition to various other categories of allegedly "false" claims, BNSF alleged that "over half of the 3,414 CARD patients submitted for Medicare [did] not have a radiologist's finding of structural abnormality in their lungs" and that this

11

made CARD's clinical diagnoses of asbestos-related disease in these cases "false." Final Pretrial Order at 2, *BNSF v. CARD*, No. CV-2019-40-M-DLC, June 8, 2023, Doc. 169. Presumably, Walder's claim was included in this category as her diagnosis of pleural thickening was made by Dr. Black but was not supported by the initial reviewer's read of the CT.

After trial, a jury found that CARD submitted 337 false claims for asbestos-related diseases to CMS. Although the jury found several claims were false (a finding based on legal rulings that CARD continues to dispute on appeal), the verdict also demonstrates that BNSF <u>failed to establish</u> the <u>vast majority</u> of the false claims it alleged. Because the verdict form does not indicate <u>which</u> claims the jury determined were false or why, it is impossible to determine whether the jury concluded that the claim for Medicare eligibility on behalf of Joyce Walder was false. Given the number of claims in the FCA case that BNSF alleged were based on CARD's clinical diagnoses without an independent radiology finding (over 1,707) in comparison to the jury's verdict on the number of false claims (337), it seems <u>unlikely</u> the jury determined the claim specific to Walder was false. However, it would be improper to speculate on that issue in a separate, unrelated trial. Accordingly, the FCA case verdict provides no evidence that CARD's independent clinical diagnosis of Walder was improper.

Additionally, according to Plaintiffs' Motion to Quash, Defendant BNSF Railway Company is proceeding to trial in this case without any medical experts. (Doc. 232 at 4.) Accordingly, it has no experts to establish whether Dr. Black's diagnosis of Joyce Walder was correct or whether he met the standard of care for a medical doctor in screening this patient. Accordingly, BNSF has no admissible evidence—by means of an unambiguous jury verdict or expert testimony—to call into question Dr. Black's care of this patient.

It is highly likely BNSF will try to use the specter of the False Claims Act case, or at least its allegations of wrongdoing in that case, to paint Walder's claim for Medicare eligibility as "false," to suggest that CARD's clinical diagnosis of pleural thickening was unreliable, or to paint all asbestos-related diagnoses—even by totally unrelated medical providers—as suspect. This is highly improper.

Since Dr. Black's diagnosis of Walder has no relevance to her claims in this case or to any of BNSF's defenses concerning her mesothelioma, any criticism that BNSF might have about Dr. Black's diagnostic practices would be a red herring: misleading, confusing to the jury, and unduly prejudicial to Walder under Federal Rule of Evidence 403. Such evidence would create a "trial within a trial," requiring Plaintiffs to defend a diagnosis and care that is not even at issue in their claim.

Such evidence would also be unfairly prejudicial to Dr. Black and CARD, who are not able to defend their care since they are not parties in this case. Any goal

of embarrassing or disparaging Dr. Black or CARD—nonparties to this action, whose care is not at issue—is improper. BNSF should not be permitted to use this case to harass Dr. Black by means of a trial subpoena unlikely to produce any relevant or admissible testimony or to use a deposition in this case to pursue testimony by Dr. Black that BNSF might use in other actions against CARD.

The potential for harassment is real. Dr. Black has already sat for at least 23 hours and 26 minutes of depositions noticed by BNSF counsel in other cases. And the attorney who noticed this deposition—who also prosecuted the FCA case for BNSF—never even appeared in this matter until he noticed Dr. Black's perpetuation deposition. Quinlan Decl. ¶ 3, Ex. 2: Spreadsheet of Dr. Black Deposition. In many of these depositions, Dr. Black's counsel has had to instruct him not to answer BNSF counsel's questions because counsel sought information unrelated to the case at hand. It would be an undue burden here for Dr. Black to have to sit for yet another deposition, only to be instructed not to answer over and over because the questions have no bearing on the issues in this case but instead seem designed only to harass him or CARD or to litigate ancillary matters. Dr. Black should be protected from the undue burden of sitting through yet another deposition designed not to provide the jury information relevant to the case before it, but only to harass Dr. Black for ulterior reasons.

## CONCLUSION

Dr. Black's trial deposition subpoena should be quashed as it subjects Dr. Black to an undue burden since it seeks cumulative and irrelevant information and information that would violate Rule 403, and it appears designed for improper purposes rather than to provide the jury necessary information that is pertinent to this case.

DATED this 26th day of January 2024.

                                    HALL BOOTH SMITH, P.C.
                                    *Attorneys for C. Bradford Black, M.D.*

                                    /s/ Jori Quinlan
                                    Jori Quinlan

## CERTIFICATE OF COMPLIANCE

Pursuant to L. R. 7.1(d)(2)(E), I certify that this **BRIEF IN SUPPORT OF NON-PARTY C. BRADFORD BLACK, M.D.'S OBJECTION AND MOTION TO QUASH TRIAL SUBPOENA ISSUED BY BNSF RAILWAY COMPANY** is printed with proportionately spaced Times New Roman text typeface of 14 points; is double-spaced; and the word count, calculated by Microsoft Word for Microsoft 365 MSO, is 3264 words long, excluding Caption, Table of Contents, Table of Authorities, Exhibit Index, and Certificate of Compliance.

DATED this 26th day of January 2024.

HALL BOOTH SMITH, P.C.
*Attorneys for Dr. C. Bradford Black*


  /s/ Jori Quinlan
Jori Quinlan