Jori Quinlan
HALL BOOTH SMITH, P.C.
101 E. Front St., Ste. 402
Missoula, MT 59802
(406) 317-0070
jquinlan@hallboothsmith.com

*Attorneys for Dr. C. Bradley Black*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| JACKSON WELLS, as Personal Representative for the Estate of THOMAS E. WELLS, deceased; and JUDITH HEMPHILL, as Personal Representative for the Estate of JOYCE H. WALDER, deceased,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>BNSF RAILWAY COMPANY,<br><br>*Defendant*. | Cause No.: CV-21-97-GF-BMM<br><br>**REPLY BRIEF IN SUPPORT OF NON-PARTY C. BRADFORD BLACK, M.D.'S OBJECTION AND MOTION TO QUASH TRIAL SUBPOENA ISSUED BY BNSF RAILWAY COMPANY** |

Non-Party C. Bradford Black, M.D. ("Dr. Black") respectfully submits this Reply Brief in support of his Objection and Motion to Quash Trial Subpoena Issued by BNSF Railway Company ("BNSF"). Dr. Black joins in and incorporates by reference the arguments made in Plaintiffs' Reply Brief in Support of Motion to

1

Quash BNSF's Subpoena of Brad Black, M.D., or Alternatively, for Protective Order (Doc. 247). Dr. Black writes separately here to address additional concerns and rebut arguments raised by BNSF in their Response in Opposition (Doc. 245) to Dr. Black's Objection and Motion to Quash Trial Subpoena. (Doc. 240).

I. **BNSF's briefing in response to Plaintiffs' and Dr. Black's motions lays bare that its intention behind the "perpetuation" deposition is to conduct a post-discovery fishing expedition against Dr. Black.**

BNSF claims it is not acting in "bad faith" because "it issued the trial preservation subpoena in response to the Court's ruling on the Motion in *Limine* upon realizing that the Court desires to have the full context of this evidence." (Doc. 244 at 7). However, BNSF's own briefing belies this assertion.

The specific issue the Court addressed in its relevant Order was the admissibility of certain evidence regarding the Center for Asbestos Related Disease ("CARD") Clinic. (Doc. 215 at 16). Notably, the Court *denied* Plaintiffs' motion in *limine* on that subject, subject to renewal *at trial*. (Doc. 215 at 16). The Court did not ask for "the full context" of this evidence, rather the Court directed BNSF to "identify any specific CARD Clinic evidence it seeks to admit outside the presence of the jury." (Doc. 215 at 16). This was not an invitation to depose Dr. Black on any subject matter whatsoever in order to provide a buffer for admissibility objections later on. Instead, it requires BNSF to define with specificity what relevant information it seeks to present to the jury *prospectively*.

2

BNSF attempts to justify a "perpetuation" deposition of Dr. Black by linking him to the CARD medical records. But the only argument BNSF proffers regarding the relevancy of these records is that they contain certain statements by Joyce Walder regarding her asbestos exposure history. (Doc. 244 at 8–9). BNSF provides no other theory of relevancy related to the CARD records, evaluation, or diagnosis. (*See generally*, Doc. 244 at 8–9; Doc. 245 at 2–3). While Dr. Black could read her records in Court, he has no personal recollection or knowledge about Joyce Walder to draw on. Furthermore, contrary to BNSF's unsupported assertion, Dr. Black did not "certify" Walder's statements regarding her exposure history. (Doc. 244 at 7–8.) He merely reviewed all of her records, including imaging and visit notes, nearly a decade ago, and based on the totality of that information, confirmed her diagnosis of pleural thickening. (Doc. 241, ¶¶ 5, 8, 11).

BNSF tacitly acknowledges or at least does not dispute that Dr. Black never personally saw Joyce Walder in an office setting, has no independent recollection of her, and that the CARD Clinic did not diagnose her with the disease at issue in this matter, mesothelioma. (*See generally*, Doc. 244 at 8–9; Doc. 245 at 2–3). Thus, BNSF's only theory of relevancy linking Dr. Black's testimony to the CARD Clinic records is in essence that Dr. Black's testimony will lay a foundation for their introduction. (*See generally*, Doc. 244 at 8–9; Doc. 245 at 2–3). But Dr. Black's testimony—whether at trial or through a "perpetuation" deposition—is not

necessary for this purpose. The operative scheduling order, as in most federal cases in Montana, provides that the parties stipulate to the foundation and authenticity of all records produced in discovery unless an objection was raised within 30 days of production. (Doc. 18 at 5.) No such objection was raised here, and Plaintiffs still have not disputed the authenticity or foundation for the CARD records, including Walder's statements about her exposure history. Thus, the fact Dr. Black reviewed the records nearly a decade ago provides no relevant information that BNSF cannot already introduce through the records themselves. At trial, BNSF can introduce the records and Walder's statements through its examinations and cross-examinations of multiple other witnesses, as it has already done in multiple other witnesses' depositions. (*See* Doc. 247 at 4).[1]

Next, despite claiming there exists no bad faith on its part because it issued the trial preservation subpoena in response to the Court's Order in *limine*, BNSF presents two unrelated justifications for Dr. Black's testimony—that Dr. Black's testimony is relevant due to his role as Lincoln County Health Officer and as a co-author of two pieces of literature (among dozens) a retained expert relied upon. (Doc. 244 at 9–10). The Court's Order in *limine* was limited to CARD Clinic evidence.

---

[1] Indeed, this foundational issue, and BNSF's arguments made throughout their briefing that a "perpetuation" deposition is necessary to save time or for convenience because they do not know when Dr. Black will need to lay the foundation for these documents, can be dispositively resolved by a stipulation from Plaintiffs as to the CARD Clinic records' foundation and authenticity.

(Doc. 215 at 16). The other theories of relevancy for Dr. Black's testimony advanced by BNSF have no relationship to that Order.[2] BNSF cannot claim it was relying on the Court's Order when it admits it will attempt to elicit testimony from Dr. Black well beyond the scope of that Order.

Nor do these other bases of testimony have any relationship to the role in which BNSF disclosed Dr. Black as a potential hybrid expert—that of a treating provider. He thus cannot offer any opinions that he might have as a County Health Officer or researcher. BNSF's arguments that its post-discovery, last-minute subpoena of Dr. Black for a "perpetuation" deposition was not made in bad faith are not supported by the record or BNSF's own arguments.

## II. BNSF's true purpose in seeking to depose Dr. Black is to harass, intimidate, or otherwise inconvenience him and elicit irrelevant, confusing, misleading, and unfairly prejudicial testimony.

In their Reply, Plaintiffs correctly argue that by admitting it intends to have Dr. Black testify about his published academic literature, BNSF is attempting to elicit expert testimony from Dr. Black beyond the scope of its expert disclosure.

---

[2] Indeed, it appears that these theories are post-hoc attempts by BNSF to justify its subpoena in light of Plaintiffs' and Dr. Black's motions to quash. In its subpoena to Dr. Black, BNSF instructed him to bring with him "[t]he entire file at CARD Clinic as it relates to Plaintiff [Joyce Walder]." (Doc. 232-1 at 16). This clearly indicates BNSF intended that Dr. Black bring with him documents relevant to the testimony they sought to elicit. BNSF did not, however, instruct Dr. Black to bring with him any documents relative to his time as Lincoln County Health Officer or any documents pertaining to his academic publications.

(Doc. 247 at 7–8). They also point out that while Dr. Black might be able to testify as a fact witness as to his *own* knowledge as the County Health Officer, he cannot opine on what "the community" knew, much less what *BNSF* knew (the only relevant issue here) without relying on expertise for which he has not been disclosed. (Doc. 247 at 5–6). They further point out that BNSF, as a matter of law, had actual knowledge regarding Libby asbestos and that it is collaterally estopped from challenging that finding. (Doc. 247 at 6–7).

In light of the above, the subpoena's true motivation is readily apparent. BNSF is attempting to harass and intimidate Dr. Black, to use the deposition as a fishing expedition, or to introduce collateral and extraneous matters to unfairly prejudice Plaintiffs or seek information for use in other litigation. As discussed in Dr. Black's Opening Brief, the FCA litigation is ongoing on appeal, and the same prosecuting attorney in that matter is now, suddenly, appearing in this matter to take Dr. Black's deposition. (Doc. 240 at 12, 14). Dr. Black should not be commanded to endure a deposition wherein none of his testimony will have relevance to the actual matter at hand, while at the same time being subject to collateral attack on issues related to other litigation he is involved with and which deposing counsel is prosecuting.

### III.   BNSF's case law cuts against it

BNSF offers no case law or other authorities that support the propriety of a perpetuation deposition in this matter. As an initial matter, BNSF makes no effort to

provide Ninth Circuit authority in support of its arguments. Nor does it address the fact that the overwhelming majority of district courts in the Ninth Circuit have concluded trial preservation depositions are subject to the same limits and time restrictions found as discovery depositions. *See Ashby v. Mortimer*, 337 F.R.D. 652, 655 (D. Idaho 2020) (collecting cases). Instead, BNSF attempts to distinguish *Ashby* from the sole case it cited in support of its arguments, *Estenfelder v. Gates Corporation*, 199 F.R.D. 351 (D. Colo. 2001). BNSF fails in this regard—the *Estenfelder* court's own logic undermines BNSF's own arguments.

BNSF is correct that the court in *Estenfelder* held on the specific facts before it that a trial preservation deposition was permissible, but BNSF ignores that the court did so through analyzing what it considered the conceptual differences between a discovery deposition and a trial deposition. *See Estenfelder*, 199 F.R.D. at 354–56. Notably, the *Estenfelder* court discussed how that "if a party can present the testimony of a witness *only* by means of a deposition, the taking of that deposition would be for a different purpose than the taking of a discovery deposition" under Fifth Circuit case law. *Estenfelder*, 199 F.R.D. at 354 (emphasis added). The *Estenfelder* court went on that "in determining whether a deposition is a discovery deposition or a trial deposition, judges may consider several factors, one factor being the purpose for which the deposition is being taken." *Estenfelder*, 199 F.R.D. at 355. In that regard, the court noted that attorneys do not normally depose

"friendly" witnesses for discovery purposes, but requests for "trial depositions" of an unfriendly witness are more likely to be "discovery depositions attempting to pose as trial depositions." *Estenfelder*, 199 F.R.D. at 355.

While the *Estenfelder* court found under the specific facts before it that the deposition sought was what it considered a legitimate trial perpetuation deposition, it noted that it had "no quarrel" with results reached in other cases denying perpetuation depositions, including *Integra Lifesciences I, Ltd. v. Merck KGaA*, which Dr. Black cited in his opening brief. 190 F.R.D. 556 (S.D. Cal. 1999); *Estenfelder*, 199 F.R.D. at 355 (citing *Integra*, 190 F.R.D. at 559; *Henkel v. XIM Prod., Inc.*, 133 F.R.D. 556, 557 (D. Minn. 1991). The court noted that in those cases, attorneys seeking leave to take depositions after the discovery period had ended had waived for *tactical* reasons the opportunity to depose a witness. *Estenfelder*, 199 F.R.D. at 355. The "implicit" corollary of such a tactical decision is that "the depositions were sought by the lawyers for ulterior purposes. Such findings provide appropriate support for a decision to deny a request for a trial deposition." *Estenfelder*, 199 F.R.D. at 355.

Here, BNSF's own actions cut against it. As is clear by this briefing and the history between Dr. Black and BNSF, despite being listed as a witness by BNSF, Dr. Black is certainly not a "friendly" witness towards them. Further, despite BNSF characterizing its proposed deposition as a "preservation" deposition for trial, BNSF

8

does not argue Dr. Black's testimony is available "only by means of a deposition"—on the contrary, it admits that Dr. Black "can be served with a trial subpoena." *Estenfelder*, 199 F.R.D. at 354; (Doc. 245 at 5). BNSF in fact *never* argues that its "preservation" deposition is necessary to "preserve" Dr. Black's testimony due to his unavailability, instead stating the deposition is necessary to provide "the entire testimony of Dr. Black prior to trial so that a ruling can be made." (Doc. 245 at 5). Finally, it argues the deposition subpoena was simply offered as a "convenience" to all parties (Doc. 245 at 5), altogether ignoring that all parties but for itself object to this "convenience." This preservation deposition is not justified by the court's logic in *Estenfelder*. Instead, it is an attempt to conduct "a discovery deposition under the guise of a trial deposition." *Estenfelder*, 199 F.R.D. at 356.

      Indeed, even ignoring the issues surrounding disclosure and relevancy addressed above, BNSF's other justifications for deposing Dr. Black demonstrate it waited for tactical reasons to depose him. BNSF claims that Dr. Black's testimony is also needed to rebut Plaintiffs' experts—but it knew of Plaintiffs' experts and their sources on August 16, 2022, well before the close of discovery, and could have deposed Dr. Black on that issue over a year ago. (*See* Doc. 244-1 at 15). Likewise, the deposition BNSF attaches to its briefing demonstrates it knew of Dr. Black's role as Lincoln County Health Officer at least as early as May 25, 2018—BNSF has no justification for waiting to depose him on that issue in this matter until after the close

9

of discovery and only a few weeks before trial. (*See* Doc. 244-1 at 18). Waiving depositions under such circumstances can only be considered a tactical decision to try and surprise, inconvenience, harass, or prejudice either Plaintiffs or Dr. Black himself through a last-minute fishing expedition to discover impeachment evidence in this matter directly or collaterally for other matters involving BNSF and Dr. Black. Even under BNSF's own proffered case law, its actions here demonstrate that its purported "preservation" deposition is sought for ulterior purposes, not to preserve testimony for trial. *Estenfelder*, 199 F.R.D. at 355.

## CONCLUSION

For the foregoing reasons, Dr. Black's trial deposition subpoena should be quashed. BNSF has not demonstrated it will lead to relevant or admissible evidence. The only *potentially* relevant testimony Dr. Black could offer is that he reviewed Walder's CARD medical records nearly a decade ago. Any other evidence is already admissible through the records themselves, and the narrowness and irrelevance of Dr. Black's review makes any testimony by him an undue burden.

Nor has BNSF demonstrated a good faith reason as to why it delayed noticing the deposition until well after the close of discovery and only a few weeks before trial. Instead, BNSF's own justifications for the deposition demonstrate BNSF made a tactical decision not to depose Dr. Black during discovery, and that it now seeks a "preservation" deposition not to preserve testimony for trial but to conduct an

improper, last minute fishing expedition for additional impeachment evidence, to otherwise harass or intimidate Dr. Black, or to introduce collateral and irrelevant issues into this trial in an effort to prejudice Plaintiffs.

DATED this 23rd day of February 2024.

HALL BOOTH SMITH, P.C.
*Attorneys for Dr. C. Bradley Black*

  /s/ Jori Quinlan
Jori Quinlan

## CERTIFICATE OF COMPLIANCE

Pursuant to L. R. 7.1(d)(2)(E), I certify that this REPLY BRIEF IN SUPPORT OF NON-PARTY C. BRADFORD BLACK, M.D.'S OBJECTION AND MOTION TO QUASH TRIAL SUBPOENA ISSUED BY BNSF RAILWAY COMPANY is printed with proportionately spaced Times New Roman text typeface of 14 points; is double-spaced; and the word count, calculated by Microsoft Word for Microsoft 365 MSO, is 2,462 words long, excluding Caption, Table of Contents, Table of Authorities, Exhibit Index, and Certificate of Compliance.

> HALL BOOTH SMITH, P.C.
> *Attorneys for Dr. C. Bradley Black*
>
> /s/ Jori Quinlan
> Jori Quinlan