Chad M. Knight
Anthony M. Nicastro
Cole R. Anderson
KNIGHT NICASTRO MACKAY, LLC
304 W. 10th Street
Kansas City, MO 64105
Email: knight@knightnicastro.com
      nicastro@knightnicastro.com
      anderson@knightnicastro.com
Telephone: (720) 770-6235
Facsimile: (816) 396-6233
**ATTORNEYS FOR DEFENDANT
BNSF RAILWAY COMPANY**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| JACKSON WELLS, as Personal Representative for the Estate of THOMAS E. WELLS, deceased; and JUDITH HEMPHILL, as Personal Representative for the Estate of JOYCE H. WALDER, deceased,<br><br>Plaintiffs,<br><br>vs.<br><br>BNSF RAILWAY COMPANY, a Delaware corporation; and DOES A-Z,<br><br>Defendants. | Case No.: 4:21-cv-00097-BMM<br><br>**DEFENDANT BNSF RAILWAY COMPANY'S SUPPLEMENT TO ITS MOTION IN LIMINE NO. 7 REGARDING SUBSEQUENT REMEDIAL MEASURES** |

COMES NOW Defendant, BNSF Railway Company ("BNSF"), by and through its counsel of record, Knight Nicastro MacKay, LLC, and hereby submits

**DEFENDANT BNSF RAILWAY COMPANY'S SUPPLEMENT TO ITS MOTION IN LIMINE NO. 7 REGARDING SUBSEQUENT REMEDIAL MEASURES**
PAGE 1

KNIGHT NICASTRO MACKAY, LLC
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

its Supplement to its Motion in Limine No. 7 regarding Subsequent Remedial Measures as follows:

## SUPPLEMENT

**I. The timeline of events leading up to BNSF's execution of the AOC in 2003 shows that BNSF's remediation of the Libby railyard was a voluntary subsequent remedial measure under Fed. R. Evid. 407.**

Rule 407 provides that "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures in not admissible to prove" negligence or culpable conduct, among other things. *United Food Grp., L.L.C. v. Cargill, Inc.*, 2014 U.S. Dist. LEXIS 204278, at *24 (C.D. Cal. 2014) (quoting Fed. R. Evid. 407). The purpose of Rule 407 is to encourage parties "to remedy hazardous conditions without fear that subsequent measures will be used as evidence against them." *United States v. PG&E*, 178 F. Supp. 3d 927, 952 (N.D. Cal. 2016) (citation omitted); *see also In re Aircrash in Bali*, 871 F.2d 812, 816 (9th Cir. 1989) ("The purpose of Rule 407 is to ensure that prospective defendants will not forego safety improvements because they fear that these improvements will be used against them as evidence of their liability.").

"'An exception to Rule 407 is recognized for evidence of remedial action mandated by superior governmental authority . . . because the policy goal of encouraging remediation would not necessarily be furthered by exclusion of such evidence.'" *PG&E*, 178 F. Supp. 3d at 952 (citation omitted); *See Adams v. United*

*States*, 2009 U.S. Dist. LEXIS 48120, at *11 (D. Idaho 2009) ("any label changes for Oust were mandated by the EPA, and not voluntarily undertaken by DuPont."); *In re Aircrash in Bali*, 871 F.2d 812, 816 (9th Cir. 1989) (finding that a report written by a government investigatory agency without the voluntary participation of the defendant was not entitled to protection under Rule 407). In *PG&E*, the defendant's gas line ruptured, causing an explosion that significantly damaged a residential community. *Id.*, 178 F. Supp. at 939. The defendant sought to exclude several subsequent remedial measures under Rule 407 that the Court ultimately held were involuntary because it was "evident that the [California Public Utilities Commission ("CPUC")] was heavily involved in requiring such improvements in the days and months following the explosion, ordering [the defendant] to take immediate measures to improve and evaluate the safety of its pipeline system." *Id.*, 178 F. Supp. 3d at 952. Specifically, the CPUC "passed a resolution within two weeks of the explosion, ordering [the defendant] to take immediate measures to improve and evaluate the safety of its pipeline system." *Id.* Several months later "the CPUC issued yet another 'rule for near-term implementation,' which would require pipeline operators to 'identify threats along their pipelines and come up with a plan to mitigate the threats, including research and development.'" *Id.*, 178 F. Supp. 3d at 952-53. It was because of these CPUC directives that the Court held that the

**DEFENDANT BNSF RAILWAY COMPANY'S SUPPLEMENT TO ITS MOTION IN LIMINE NO. 7 REGARDING SUBSEQUENT REMEDIAL MEASURES**
PAGE 3

KNIGHT NICASTRO MACKAY, LLC
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

defendant's remedial measures were "anything but voluntary." *Id.*, 178 F. Supp. 3d at 953.

The timeline of events from 1999 to BNSF's execution of the Administrative Order on Consent ("AOC") on April 17, 2003, shows that the EPA did not compel BNSF to investigate, test for, or remove asbestos contaminated materials from the Libby railyard before it had already done so on its own volition. The EPA's yearly Action Memorandums explicitly state the locations within the greater Libby area that were the subjects of its removal actions before the AOC was signed, and BNSF's Libby railyard was never designated as a location for remediation prior to BNSF submitting its Final Remedial Action Work Plan and Health and Safety Plan on September 3, 2002. **Ex. A**: BNSF AC 4207.

> **a. The EPA's Action Memorandums demonstrate that the Libby railyard was not subject to EPA investigation, testing, or removal action from 1999 to 2002 and BNSF had independently conducted these activities on its own volition.**

> i.    **EPA May 23, 2000 Action Memorandum**

In November 1999, a series of newspaper articles reported that W.R. Grace miners and their families in the Libby area had died or became ill from exposure to asbestos contaminated vermiculite. In response to these articles, the EPA went to Libby that same month and met with state and local officials to learn about the situation and determine their next steps. The EPA's initial assessment included an

**DEFENDANT BNSF RAILWAY COMPANY'S SUPPLEMENT TO ITS MOTION IN LIMINE NO. 7 REGARDING SUBSEQUENT REMEDIAL MEASURES**
PAGE 4

KNIGHT NICASTRO MACKAY, LLC
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

inspection of the former W.R. Grace mine and its processing facilities, interviews with local officials and members of impacted families, and collecting a small set of environmental samples. **Ex. B**: EPA May 23, 2000 Action Memo. The results of the EPA's tests confirmed that there were high amounts of asbestos-contaminated vermiculite at W.R. Grace's screening plant, the export plant, the mine's tailings pile/pond, and in residential and shared community areas. *Id.*, at 4. These findings led the EPA to initiate a larger scale rapid investigation with the following goals:

i. Obtain information on airborne asbestos levels in Libby (a limited number of homes, businesses and the Export Plant and Screening Plant) in order to judge whether time-critical intervention is needed to protect public health.

ii. Obtain data on asbestos levels in potential source materials (at the Export Plant and Screening Plant), and identify the most appropriate analytical methods to screen and quantify asbestos in source material.

*Id.*, at 5. "In December 1999, the Agency collected samples of air and dust from inside 32 homes and 2 businesses around Libby, and collected samples from yards, gardens, insulation, and driveways at these same locations." *Id.*, at 5. "In addition, air, dust and soil samples were collected from the Screening Plant and Export Plant." *Id.*, at 5. "Samples were also collected from along Rainy Creek Road." *Id.*, at 5. This was followed by the sampling at an additional 89 residences, area schools and other potential source areas around Libby in March and April 2000." *Id.*, at 5.

On May 23, 2000, the EPA submitted its first "Action Memorandum," proposing the guidelines for the initial remediation efforts in Libby. *Id.* The first

**DEFENDANT BNSF RAILWAY COMPANY'S SUPPLEMENT TO ITS MOTION IN LIMINE NO. 7 REGARDING SUBSEQUENT REMEDIAL MEASURES**
PAGE 5

KNIGHT NICASTRO MACKAY, LLC
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

action memorandum proposed removal actions "for two portions of the Libby Asbestos Site [], the Export Plant and the Screening Plant." *Id.* These two areas are defined in the memorandum as follows:

> The Mine and Mill located on Rainey Creek Road on top of Zonolite Mountain; the Screening Plant and Railroad Loading Station located astride the Kootenai River at the intersection of Rainy Creek Road and Highway 37 (the Screening Plant); the Expansion/Export Plant (the Export Plant) located off Highway 37 where it crosses the Kootenai River, and an Expansion Plant located at the end of Lincoln Road, near 5th Street (Figure 2).

*Id.*, at 2. A "Health Consultation" from the Department of Health and Human Services attached to the EPA's May 23, 2000 Action Memorandum further specified that the River Loading Facility was part of the "Screening Plant" that was operated by W.R. Grace:

> The former Screening Plant/Railroad Station and Export Plant/Exfoliation Plant (referred to herein as the screening plant and export plant) are part of a large scale vermiculite processing complex **that was operated by Grace, Inc.** in Libby, Montana until operations ceased in 1990.

**Ex. B**: DPHHS Health Consultation May 17, 2000, at 1. Additionally, the May 23, 2000 action memorandum breaks down the specific areas included in the screening plant and export plant:

> The Export Plant occupies approximately 11 acres of property which is now owned by the City of Libby, and leased to a retail lumberyard (Figure 2). Some amphibole asbestos contamination has been found on adjacent parcels of land which had been used as youth baseball fields, but are now unused. During operations the screened ore was trucked from the Screening Plant to the Export Plant, and staged with various other vermiculite related materials between the ballfields and the Export Plant, and in a few other outlying areas.

**All of these areas are considered part of the Export Plant for purposes of this Action Memo**.

The Screening Plant occupies approximately 21 acres of property which is now used for combined commercial/residential use. It is likely that amphibole asbestos contamination has spread to the parcels of land (zoned residential) to the west and south of the Screening Plant proper. During operations the screened ore was moved by conveyor belt across the Kootenai River to a rail loading operation adjacent to a Burlington-Northern Rail Line. Amphibole asbestos contamination has also been found in this area. **All of these areas are considered part of the Screening Plant for purposes of this Action Memo**.

**Ex. B**, at 3 ("Residual mineral fiber contamination at the former W.R. Grace Screening Plant and Export Plant poses an imminent and substantial endangerment to public health."). The memorandum proposed removal actions including "demolition/cleaning of contaminated buildings and structures" as well as "excavation of contaminated soil, debris, and vermiculite" at the aforementioned W.R. Grace properties along with certain residential and commercial properties that were tested for asbestos. **Ex. B**, at 14-17. The May 23, 2000, Action Memorandum does not make any mention of BNSF's Libby Railyard.

    ii.    **EPA July 20, 2001 Action Memorandum**

In August 2000, removal actions began at the export plant. **Ex. C**: EPA July 20, 2001 Action Memo, at 10. This included a relocation of the Millwork West's lumber operations as well as decontamination and abatement actions of the five buildings on Grace's property – "the Pole Barn, Planer Shop, Warehouse, Lumber

**DEFENDANT BNSF RAILWAY COMPANY'S SUPPLEMENT TO ITS MOTION IN LIMINE NO. 7 REGARDING SUBSEQUENT REMEDIAL MEASURES**
PAGE 7

KNIGHT NICASTRO MACKAY, LLC
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

Storage, and a Small Shed" – which was completed by December 2000. *Id.*, at 10. "Removal work at the Export Plant also included the excavation of amphibole asbestos laden soil, with Grace choosing to dispose of this material at the mine." *Id.*, at 10. May 2001 sampling showed the high presence of asbestos "on the west side of the Export Plant's former operations, apparently spanning the City of Libby's property and nearby residential areas." *Id.*, at 10. "This area remains to be excavated, **and EPA will direct Grace to do so this summer**." *Id.*, at 10 (emphasis added). The action memo later lists the parties involved with the restoration of the Export Plant as "the City of Libby (property owner), Millworks West (Site tenant), and Grace (PRP)." *Id.*, at 11.

On July 20, 2001, the EPA submitted its second action memorandum for the Libby asbestos site. The memorandum's "Site Description" begins by stating that the removal actions at the screening plant and the export plant have not yet been completed and will require further action. *Id.,* at 2, 7. The memorandum also addresses "six additional locations" that were identified for required cleanup –the Brownlee Property, the Seifkie Property, Plummer Elementary, the Libby High School, the Libby Middle School, and Rainy Creek Road. *Id.*, at 2-4. There is again no mention in the 2001 action memo of the Burlington Northern, its railyard, or BN's former right of way.

**DEFENDANT BNSF RAILWAY COMPANY'S SUPPLEMENT TO ITS MOTION IN LIMINE NO. 7 REGARDING SUBSEQUENT REMEDIAL MEASURES**
PAGE 8

KNIGHT NICASTRO MACKAY, LLC
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

The EPA's 2001 Action Memorandum also specifies the method in which the EPA was compelling W.R. Grace to conduct remediation work at the Export Plant:

> Currently work at the Export Plant **is being done by W.R. Grace under a Unilateral Administrative Order (UAO)**. Since the attempt to decontaminate the buildings at the Export Plant was unsuccessful, and given the poor state of the buildings as a result from Grace's attempts to decontaminate them, **EPA will direct Grace to dismantle the buildings, and properly dispose of the debris.** In addition, Grace needs to complete the excavation of contaminated soil in and around the buildings.

*Id.*, at 20 (emphasis added).

### iii. EPA May 2, 2002 Action Memorandum

On May 2, 2002, the EPA submitted its third action memorandum for the Libby site. This is the first memorandum that mentions the BNSF Libby Railyard:

> There are two large commercial operations within the city limits of Libby. The Burlington-Northern Railroad (BNR) rail yard straddles Highway 37 where it crosses the Kootenai River. BNR investigations identified amphibole asbestos contamination along the tracks in the rail yard, and in the buildings. BNR has begun to address these issues by removing the contaminated source materials from its property.

**Ex. D**: EPA May 2, 2002 Action Memo, at 4. The EPA's language discussing BNSF's independent remediation efforts differs from its discussion of the remediation underway at the Stimson Lumber Mill, the other large commercial business in Libby:

> The other large commercial operation is the Stimson Lumber Mill. The mill currently manufactures plywood and dimension lumber. Prior to 1950, this site housed vermiculite processing operations. In addition, a portion of this property was used as a tree nursery, which used various grades of Libby
DEFENDANT BNSF RAILWAY COMPANY'S SUPPLEMENT TO ITS MOTION IN LIMINE NO. 7 REGARDING SUBSEQUENT REMEDIAL MEASURES
PAGE 9

KNIGHT NICASTRO MACKAY, LLC
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

vermiculite ores in bulk. Several of the buildings on the Mill property also contain varying amounts of vermiculite. **The EPA and Stimson are currently investigating the contamination** associated with these former operations, and monitoring the exposure of Stimson workers to amphibole asbestos.

*Id.*, at 4. The 2002 Action Memorandum also provided a status update of the remedial efforts for each location in which it had identified asbestos contamination:

| Location | Action Description and Status |
|---|---|
| Export Plant | Grace demolished and disposed of 4 buildings on this property, and removed approximately 16,000yds³ of contaminated soil, and 1500 yds³ of debris from the property. EPA and Grace are working to relocate the business from the remaining building, demolish the building, and complete clean up. Ongoing. |
| Screening Plant | Five parcels. Naturally occurring layers of asbestos material appear to underlie portions of the Site. Ongoing. |
| Raintree Nursery and Wise properties | All Raintree parcel structures were demolished. Some asbestos remains four or more feet below ground surface. EPA placed a fabric membrane at the four-foot excavation depth on the north side of the Site to aid soil stability and mark the limits of excavation. Complete. |
| KDC Bluffs Disposal Areas | EPA excavated and backfilled the three parcels. Sampling indicates low-level surface contamination of a 2-4 acre area which is zoned and planned for residential development. Risk factor evaluation is underway. EPA excavated 30-40% of the contaminated soil from the KDC-Flyway. Ongoing. |

**DEFENDANT BNSF RAILWAY COMPANY'S SUPPLEMENT TO ITS MOTION IN LIMINE NO. 7 REGARDING SUBSEQUENT REMEDIAL MEASURES**
PAGE 10

KNIGHT NICASTRO MACKAY, LLC
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

| Rainy Creek Road | To improve haul road conditions and control elevated airborne asbestos fibers, EPA paved the lower half-mile of the road, built a decontamination station at the transition to the unpaved portion, and instituted active dust suppression. The USFS and Lincoln County have issued a joint temporary road closure, restricting access. EPA is working with the USFS to develop a site specific Memorandum of Understanding to coordinate each Agency's long-term responsibility for the Site. Complete. |
|---|---|
| Plummer Elementary School | EPA has excavated all contaminated soil, and restored the area for use as a playground. Complete. |
| Libby High School and Libby Middle School | EPA identified contamination under and around the tracks and bleachers, and in buildings. EPA removed all tailings and wastes, contamination underneath the bleachers and in the buildings. Most work has been completed. Track re-surfacing is planned (Spring 2002.) Ongoing. |
| Brownlee Property | EPA removed the pile of unexfoliated vermiculite, and all associated amphibole asbestos contamination. Complete. |
| Seifke Property | EPA cleaned or removed all equipment contaminated with amphibole asbestos, demolished two outbuildings, and cleaned the interior of the main residence. EPA also excavated all contaminated soil and debris, and moved this material to the mine for disposal. Some building reconstruction slated for Summer 2002. Ongoing. |
| Burris and Calhoun Properties | EPA found tremolite rocks used as garden landscaping borders at both sites. The garden soils contained amphibole asbestos at levels greater than 1%. EPA found significant levels of asbestos fibers in dust in the Calhoun residence. EPA removed all contaminated soils and source materials, and cleaned the interior of the Calhoun residence. Complete. |
| Johnson, Sanderson, Temple, Struck, Rice, Fuhlendorf, Spencer, and Westfall Properties | EPA found vermiculite wastes and asbestos up to 10% by PLM in yard or garden soils at all these locations. EPA removed any tremolite rocks, and either covered or demarcated major contaminated areas. EPA is characterizing nature and extent of contamination. Ongoing. |
| Champion Haul Road | EPA found vermiculite ore and/or tailings with asbestos concentrations greater than 1% at the surface, where the road leads from Highway 37 into a residential area. EPA covered these areas with a durable geotextile fabric, while sampling continues. Ongoing. |

*Id.*, at 6. For current actions as of the 2002 Action Memo, the EPA stated that it is "continuing its on-site investigations in Libby" and that "most of the previous removal work is either complete or shut down for the winter." *Id.,* at 7. The 2002

DEFENDANT BNSF RAILWAY COMPANY'S
SUPPLEMENT TO ITS MOTION IN LIMINE NO. 7 REGARDING SUBSEQUENT REMEDIAL MEASURES
PAGE 11

KNIGHT NICASTRO MACKAY, LLC
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

Action Memo makes no other mention of the BNSF Railyard or other BNSF properties, and the Memo includes no language reflecting any order issued by EPA to BNSF to remediate its properties.

> **b. BNSF's negotiations with the EPA show that the AOC was a product of BNSF's voluntary independent investigation and assessment of potential asbestos contamination in the Libby railyard.**

On March 15, 2001, BNSF met with Environmental Resources Management ("EMR") in Seattle, WA to outline EMR's consulting strategies for BNSF regarding its Libby properties. On April 16-17, 2001, in conjunction with HDR (an industrial hygiene consulting group), BNSF engaged in widespread air sampling for maintenance of way ("MOW") employees within the Libby Railyard, to understand the potential for exposure during their daily job duties. BNSF submitted EMR's Remedial Action Work Plan and the Health and Safety Plan to the EPA on September 3, 2002. **Ex. A**. Additionally, EMR prepared and proposed to the EPA an Interim Removal Action ("IRA") plan on September 3, 2002, for remedial actions that could be conducted from the last week in September until the first week of October. **Ex. E**: BNSF AC 4194 Letter from EMR to EPA.

On October 2, 2002, the EPA responded to BNSF with its comments on BNSF's submission and requesting additional documents to address "logistical problems with the approach that should be addressed prior to mobilizing on the field." **Ex. A**. On October 17, 2002, BNSF sent a draft of the AOC with proposed

**DEFENDANT BNSF RAILWAY COMPANY'S SUPPLEMENT TO ITS MOTION IN LIMINE NO. 7 REGARDING SUBSEQUENT REMEDIAL MEASURES**
PAGE 12

**KNIGHT NICASTRO MACKAY, LLC**
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

revisions to the EPA. **Ex. F**: Oct. 17, 2002 Comments By BNSF re Libby AOC. **BNSF attached a letter to its comments, that stated that "BNSF is volunteering to conduct removal activities because of the mutual benefits derived with respect to the environment, community and future use of the property."** *Id.* (emphasis added). On October 22, 2002, the EPA approved the Final Remedial Action Work Plan for the BNSF Site in Libby. **Ex. G**: BNSF AC 4206. BNSF executed the AOC with the EPA on April 17, 2003.

There is no evidence in the record suggesting that BNSF's remediation of the railyard was "mandated" by the EPA. *See PG&E*, 178 F. Supp. 3d at 952; *Adams*, at *11; *In re Aircrash in Bali*, 871 F.2d 812, 816. To the contrary, the record shows that BNSF began its own investigation, testing, and remediation of asbestos contaminated materials at its railyard long before the EPA even mentioned the railyard as part of its action memorandums. Then, when the EPA did address the Libby railyard as a location of possible contamination in Libby, it stated that "[BNSF] investigations identified amphibole asbestos contamination … in the rail yard" and "[BNSF] has begun to address these issues by removing the contaminated source materials from its property." **Ex. D**, at 4. This is the opposite of a mandate. Instead, this is the EPA recognizing that BNSF has voluntarily begun investigation and remediation on its own accord prior to any instruction from the EPA to do so.

Moreover, the record shows that if the EPA wanted to mandate BNSF to remediate its railyard, the proper enforcement mechanism would have been a Unilateral Consent Order. *See* EPA, *Superfund Unilateral Orders*, https://www.epa.gov/enforcement/ superfund-unilateral orders#:~:text=A%20unilateral%20administrative%20order%20(UAO,to%20take%20a%20 response%20action (last visited Mar. 3, 2024) ("A unilateral administrative order (UAO) is an enforcement instrument that EPA can use to require parties to take a response action."). The EPA's 2001 Action Memorandum shows that it mandated W.R. Grace's remediation of its properties through the use of a Unilateral Consent Order, compared to BNSF, which reached a voluntary agreement with the EPA through an Administrative Order on Consent. *See* **Ex. C**, at 20 ("Currently work at the Export Plant is being done by W.R. Grace under a Unilateral Administrative Order (UAO)."); *See ITT v. BorgWarner, Inc.*, 506 F.3d 452, 455 (6th Cir. 2007) ("Plaintiff voluntarily entered into an Administrative Order by Consent with the EPA [] with respect to the NBFF Site.").

The EPA's language regarding BNSF's conduct in addressing the asbestos contamination on its property also differs greatly from the way the EPA referred to its efforts to remediate W.R. Grace's property:

> [The west side of the Export Plant] remains to be excavated, and the EPA will direct Grace to do so this summer.

**Ex. C**, at 10.

> EPA will direct Grace to dismantle the buildings, and properly dispose of the debris. In addition, Grace needs to complete the excavation of contaminated soil in and around the buildings.

**Ex. C**, at 20. Likewise, for Stimson Lumber, the EPA states that "the EPA *and Stimson are currently investigating the contamination associated with these former operations…*" **Ex. B**, at 4.

Thus, in order to show that BNSF's remediation of its Libby railyard was not voluntary, Plaintiffs are required to produce some evidence showing that BNSF was mandated by the EPA to conduct its remediation. No such evidence exists in the record. Accordingly, BNSF respectfully requests that its Motion in Limine No. 7 be granted and remediation efforts pertaining to the Libby railyard be considered an inadmissible subsequent remedial measure under Fed. R. Evid. 407.

## CONCLUSION

For the aforementioned reasons, BNSF respectfully requests that this Court grant its Motion in Limine No. 7.

Dated this 19th day of March, 2024.

    KNIGHT NICASTRO MACKAY, LLC

    By: /s/ Anthony M. Nicastro
        Anthony M. Nicastro
        *Attorneys for Defendant*
        *BNSF Railway Company*

**DEFENDANT BNSF RAILWAY COMPANY'S SUPPLEMENT TO ITS MOTION IN LIMINE NO. 7 REGARDING SUBSEQUENT REMEDIAL MEASURES**
PAGE 15

KNIGHT NICASTRO MACKAY, LLC
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with L.R. 7.1(d)(2), and that the number of words in the brief, excluding caption, certificates of compliance and service, table of contents and authorities, and exhibit index, is less than 3,250 words.

    KNIGHT NICASTRO MACKAY, LLC

    By: /s/ Anthony M. Nicastro
        Anthony M. Nicastro
        *Attorneys for Defendant*
        *BNSF Railway Company*

**DEFENDANT BNSF RAILWAY COMPANY'S SUPPLEMENT TO ITS MOTION IN LIMINE NO. 7 REGARDING SUBSEQUENT REMEDIAL MEASURES**
PAGE 16

**KNIGHT NICASTRO MACKAY, LLC**
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of March, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Roger Sullivan
Jinnifer Jeresek Mariman
Ethan Welder
John F. Lacey
McGARVEY LAW
345 First Avenue East
Kalispell, MT 59901
rsullivan@mcgarveylaw.com
jmariman@mcgarveylaw.com
ewelder@mcgarveylaw.com
jlacey@mcgarveylaw.com

Alexandra Bailey Abston *(PHV)*
Rachel Lanier *(PHV)*
Sam Taylor, II *(PHV)*
Lanier Law Firm, P.C.
10940 W. Sam Houston Pkwy N., Ste. 100
Houston, TX 77064
Alex.abston@lanierlawfirm.com
Rachel.lanier@lanierlawfirm.com
Sam.taylor@lanierlawfirm.com
*Attorneys for Plaintiffs*

        KNIGHT NICASTRO MACKAY, LLC

        By: /s/ Anthony M. Nicastro
           Anthony M. Nicastro
           *Attorneys for Defendant*
           *BNSF Railway Company*

**DEFENDANT BNSF RAILWAY COMPANY'S SUPPLEMENT TO ITS MOTION IN LIMINE NO. 7 REGARDING SUBSEQUENT REMEDIAL MEASURES**
PAGE 17

**KNIGHT NICASTRO MACKAY, LLC**
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235