# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| JACKSON WELLS, as Personal Representative for the Estate of THOMAS E. WELLS, deceased; and JUDITH HEMPHILL, as Personal Representative for the Estate of JOYCE H. WALDER, deceased,<br><br>             Plaintiffs,<br><br>   vs.<br><br>BNSF RAILWAY COMPANY,<br><br>             Defendant. | **CV-21-97-GF-BMM**<br><br>**FINAL PRETRIAL ORDER** |

Pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16.4, the parties submit this Final Pretrial Order to govern the course of trial in this matter.

## I.    Nature of Action.

This case involves the deaths of two community members of Libby, Montana; Thomas E. Wells and Joyce H. Walder. Each died from malignant mesothelioma. Plaintiffs allege their mesothelioma was caused by Defendant BNSF Railway Company and its asbestos contaminated downtown Libby railyard. Plaintiffs are pursuing strict liability and negligence claims and seeking general, special, and punitive damages for BSNF's harboring of asbestos in its railyard, failing to control

1

or clean up that asbestos, failure to prevent that asbestos from becoming airborne and disbursing into the neighboring community, and failing to warn the community of the hazards posed thereby. To support their negligence and punitive damage claims, Plaintiffs further allege BNSF knew the dangers of asbestos and knew Libby vermiculate was contaminated with asbestos. BNSF denies that it was negligent and denies that it engaged in abnormally dangerous activity. Additionally, BNSF asserts that Plaintiffs' strict liability claim is precluded by the common carrier exception.

## II. Jurisdiction and Venue.

This Court maintains subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity of citizenship). The amount in controversy for each Plaintiff exceeds $75,000. Venue in this action is proper in the Helena and Butte Divisions of the Montana District Court pursuant to Minute Entry 233 and Docs. 234 and 235 wherein the parties consented to the Court moving the trial in this matter from the Great Falls Division to Helena and drawing the jury pool for this case from the Helena and Butte Divisions.

## III. Jury.

This case is set for trial before a jury of six persons. Neither party contests trial of any issue by the jury.

## IV. Agreed Facts.

The following facts are agreed upon and require no proof:

1. Plaintiff Jackson Wells, as Personal Representative for the Estate of Thomas E. Wells, deceased, is a resident of Sedro-Woolley, Washington. At the time of his death, Thomas E. Wells was a resident of LaConner, Washington.

2. Plaintiff Judith Hemphill, as Personal Representative for the Estate of Joyce H. Walder, deceased, is a resident of Libby, Montana. At the time of her death, Joyce H. Walder was a resident of Westminster, California.

3. Defendant BNSF Railway Company is a corporation organized and existing under the laws of the State of Delaware and is engaged in interstate commerce with its headquarters in Fort Worth, Texas.

## V. Elements of Liability.

### 1. Strict Liability

The Court has found (Doc. 222, pp. 21-22):

> The Montana Supreme Court's ruling in *Eddy* collaterally estops BNSF from arguing against the application of strict liability for its handling of asbestos in and around the Libby railyard. Development of the record will eventually determine which statutory duties, if any, required BNSF to store and handle asbestos at the Libby railyard and would be subject to § 521's immunity from strict liability pursuant to the common carrier defense.

Thus, the Court must determine whether the common carrier defense applies to BNSF's strict liability. If so, Plaintiffs must prove that the condition of BNSF's Libby Railyard was a cause of the injury to the Plaintiffs.

### 2. Negligence

Plaintiffs' negligence claims against BNSF arise from BNSF's ownership of the downtown Libby Railyard. Plaintiffs must prove:

(1) That BNSF was negligent.

(2) That the Plaintiffs Thomas Wells and Joyce Walder were injured.

(3) That BNSF's negligence was a substantial contributing factor in causing the injury to the Plaintiffs.

(4) The amount of money that will compensate the Plaintiffs for their injuries.

BNSF was negligent as follows:

(a) in failing to exercise ordinary care to keep its Libby Railyard reasonably safe for all persons who foreseeably might come upon it, and to warn such persons of any hidden or lurking danger upon its Libby Railyard;

(b) in failing to take measures to prevent toxic dust from accumulating upon and escaping from its downtown Libby railyard;

(c) in maintaining an unreasonably dangerous and/or hidden and lurking danger, in the form of toxic dust, on its downtown Libby railyard;

(d) in failing to adequately eliminate, control and/or contain the toxic dust present on its downtown Libby railyard and allowing this dangerous toxin to escape therefrom;

(e) in failing to exclude children, and others, attracted to its downtown Libby railyard;

(f) in failing to warn persons such as Plaintiffs' decedents who foreseeably might become subject and exposed to any danger, including hidden or lurking danger, from such toxic dust,;

(g) in failing to conform its activities in Lincoln County to applicable statutes (e.g., § 50-78-101 M.C.A. et seq. and 29 U.S.C. Ch. 15) and regulations; and

(h) in failing to conform its activities in Lincoln County to common-law standards of care as well as its own plans, rules and standards.

Plaintiffs must prove that BNSF's negligence was a cause of the injury to the Plaintiffs.

### 3. Punitive Damages

Plaintiffs must prove by clear and convincing evidence that BNSF is guilty of malice. In punitive damage cases, a defendant is guilty of malice if it has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiffs and defendant either:

5

(a) deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiffs; or

(b) deliberately proceeds to act with indifference to the high probability of injury to the plaintiffs.

Although BNSF knew or intentionally disregarded that its acts or omissions created a high degree of risk of harm to the Plaintiffs' decedents, BNSF nevertheless deliberately acted in conscious disregard of and indifference to the risk imposed upon the Plaintiffs' decedents by their ongoing exposure to asbestos.

## VI. Defense Elements.

Plaintiffs objected to BNSF's insertion of information in the "Elements of Liability" that it proposed for matter of completeness, except for BNSF's suggestion regarding the causation element. First, Plaintiffs should have included the Court's finding in Doc 222 in the section on Strict Liability which stated:

> A genuine dispute exists as to BNSF's practices at the Libby railyard and the presence of asbestos and asbestos contaminated materials therein. A genuine dispute also exists as to the scope of BNSF's activities that fall within the auspice of BNSF's transport of vermiculite.

This ruling by the Court appeared prior to the statement included by the Plaintiffs at Doc. 222 p.20.

Additionally, BNSF submits that the element following Plaintiffs paragraph should read: "Plaintiffs' must also prove that the condition of BNSF's Libby Railyard was a cause of the injury to the Plaintiffs."

6

Elements specific to the Defense:

1. BNSF was not negligent in any of the ways alleged by Plaintiffs in Count 1 of the *Complaint*. Additionally, BNSF objections to Plaintiffs' negligence claims that are contrary to premise liability law. For instance, paragraphs (a) and (f). Also, the laws cited in paragraph (g) do not apply. Plaintiffs below assert that this issue is an affirmative defense however it is not. This is an issue of legal duty.

2. BNSF was not a legal cause of the injuries alleged by the Plaintiffs.

3. BNSF disputes the nature and extent of the injuries and damages claimed by the Plaintiffs.

4. Plaintiffs' claims are preempted and precluded by federal law.

5. Rail operations do not constitute an abnormally dangerous activity as a matter of law and do not give rise to strict liability, and BNSF is shielded from any claim for strict liability by the common carrier exception

6. Additionally, any finding of strict liability for abnormally dangerous activity must occur in a case specific process in which the facts and allegations of each case are analyzed separately. To the extent Plaintiffs contend the Court should rely on prior rulings from the *Barnes vs. BNSF* lawsuit, substantial factual differences exist in that case. For example, Plaintiffs in this action changed their strict liability elements to make different allegations from the *Barnes* case. First, these Plaintiffs removed the word "transportation" from their allegations in *Barnes* and added a new claim that BNSF "harbored an abnormally dangerous condition"

7

by "maintaining a reservoir of asbestos containing material". *See* Doc 1 at ¶¶ 57 and 59. 7. This Court ruled that a disputed issue of material fact exists as to "BNSF's practices at the Libby railyard and the presence of asbestos and asbestos contaminated materials therein." *See* Doc 222 at pg. 20. The Court made this finding because BNSF presented sufficient evidence to dispute Plaintiffs' characterizations of the Libby railyard as a toxic "open-air repository for asbestos" and BNSF cited to specific scientific sampling that would demonstrate that a "reservoir of asbestos" did not exist. *Id*. Summary Judgment cannot stand when a genuine issue of material fact exists and the Court made this specific finding for this case.

8.  Owning and operating a railyard in Libby, Montana does not give rise to strict liability. To the extent Plaintiffs argue collateral estoppel, the Montana Supreme Court already addressed rail yard contamination allegations in the *Barnes* matter on interlocutory appeal and found that those allegations were covered by the common carrier exception. Therefore, Plaintiffs' new strict liability allegations in this case which characterize the railyard as an open-air reservoir and storage facility that harbored asbestos has already been found to be common carrier activities except from strict liability.

8.  BNSF did not store asbestos containing material on its property, nor did it maintain a reservoir of asbestos on its property.

9.  Montana follows the common carrier exception to strict liability and the Montana Supreme Court has already found that BNSF is entitled to the common

8

carrier exception for strict liability imposed as a result of its transportation of vermiculite. Plaintiffs' allegations in Paragraph 57 of their Complaint touch and concern transportation and common carrier functions and therefore cannot be a basis for strict liability pursuant to the common carrier exception.

10. Plaintiffs' claims fail to offer any proof that Decedent Wells or Decedent Walder were exposed to asbestos above federal permissible limits.

11. Plaintiffs' alleged exposures on railroad property, if any, were a result of trespass, and any harm suffered from such trespass is not compensable.

12. Plaintiffs' medical conditions were not caused by BNSF. They were not harmfully exposed to any asbestos containing materials due to BNSF's activities as a common carrier while they were members of the Libby Community.

13. Damages, even non-economic damages, cannot be awarded based on speculation.

14. Plaintiffs' injuries and damages, if any, may have been caused by the action and conduct of other persons, corporations or entities over whose conduct and actions Defendant had neither control, nor the right to control, and for whom Defendant has no liability.

15. Defendant is entitled to offset or deduct any amounts paid, or amounts that will be paid, to Plaintiffs from settled parties, entities, Trusts, workers' compensation claims or insurers.

16. Plaintiff Walder's claim is barred by the statute of limitations.

9

17. BNSF cannot be held liable for punitive damages for acts allegedly performed by other companies. Plaintiff asserts below that this issue is an affirmative defense. It is not. This is an issue of law which was addressed in Bowen v. W.R. Grace & Co., 781 F.Supp. 682; 683 (D. Mont. 1991). Plaintiff cites to the McCulley case below however that case interpreted Federal banking law. It cites a Montana merger law that has since been repealed. Additionally, Plaintiffs failed to present sufficient evidence to meet the burden for establishing punitive damages.

## VII. Relief Sought.

Plaintiffs claim special and general damages for wrongful death and survivorship, including the following:

1. Reasonable damages for lost enjoyment of established course of life;

2. Reasonable damages for loss of services which can no longer be performed;

3. Reasonable damages for physical, mental and emotional pain and suffering;

4. On behalf of those so injured, the Personal Representatives pray for distinct and separate assessment and recovery of reasonable damages for the heirs' loss of care, comfort, society and support of the deceased by reason of the wrongful death of their loved ones;

5. Reasonable damages for grief and sorrow;

6. For costs of suit;

7. For punitive damages; and

8. For such further relief as is just and equitable under the circumstances.

Defendant is not seeking any relief in the action other than those it is entitled to through the defense of this matter.

## VIII. Legal Issues

### A. Plaintiff's Legal Issues:

#### 1. Scope of Common Carrier Defense

The Court will need to determine which statutory duties, if any, required BNSF to store and handle asbestos at the Libby Railyard and would be subject to § 521's immunity from strict liability pursuant to the common carrier defense. (Doc. 222, pp. 21-22).

#### 2. Admissibility of Trial Perpetuation Deposition of Dr. Brad Black

The Court will need to determine the admissibility, if any, of Dr. Black's trial perpetuation deposition. That issue has been raised pursuant to this Court's Order *in limine* regarding the CARD Clinic (Doc. 215, p. 16), the parties' briefing in response to BNSF's trial perpetuation subpoena of Dr. Black (Docs. 232, 240, 244, 245, 247, 256), the Court's Order denying Plaintiffs' and Dr. Black's respective motions to quash (Doc. 262), and the parties' forthcoming simultaneous objections to Dr. Black's deposition testimony in light of the Court's direction (Doc. 262).

#### 3. BNSF's Untimely Affirmative Defenses (Trespass Bars Recovery & No Punitive Liability for Predecessor Conduct)

11

These two affirmative defenses were first disclosed by BNSF one week ago, on March 8, 2024. BNSF has waived these two affirmative defenses by failing to include them in its pleadings. *See Meadow Lake Estate Homeowners Ass'n v. Shoemaker*, 2008 MT 41, ¶ 29, 341 Mont. 345, 178 P.3d 81. These two affirmative defenses are legal barriers to Plaintiffs' recovery and purely questions of law.

Even if the Court were to allow BNSF to maintain these two affirmative defenses, Montana substantive law does not support the merits of BNSF's defenses. *See, e.g., McCulley v. U.S. Bank of Montana*, 2015 MT 100, ¶ 40, 378 Mont. 462, 347 P.3d 247 (citing Montana's corporate merger statutes, "respect for ordinary language dictates that [successor corporate defendants] be held liable for *all* damages, including punitive damages") (emphasis in original); *Dobrocke v. City of Columbia Falls*, 2000 MT 179, ¶ 34, 300 Mont. 348, 8 P.3d 7 (Montana "did away with the designation of invitee, licensee or trespasser and held that the status of an injured party does not affect a property owner's general duty of care") (citing *Limberhand v. Big Ditch Co.*, 218 Mont. 132, 706 P.2d 491 (1985)) (*Dobrocke* overruled on other grounds by *Roberts v. Nickey*, 2002 MT 37).

### 4. BNSF Continued Attempts to Apportion Fault to Non-Parties

BNSF's proposed exhibits, witnesses, deposition designations, and discovery requests continue to attempt to apportion fault to non-parties. This Court has already ordered BNSF may not attempt to negate liability or apportion fault to W.R. Grace, the State of Montana, Robinson Insulation Company, Grogan Robinson Lumber

12

Company, or any superseding intervening causes. *Order* [re: Non-Parties], Doc. 210, pp. 22, 31, 32; *Order* [re: Non-Party MIL], Doc. 215, p. 14; *see also BNSF Ry Co. v. Eddy*, 2020 MT 59, ¶¶ 59, 62 (wherein the Montana Supreme Court held "BNSF may not introduce evidence of Grace's conduct to refute causation by alleging Grace was a substantial factor in causing Plaintiffs' injuries. . ." and "Grace's actions were not a superseding intervening cause with regards to BNSF's liability here, and BNSF cannot use evidence of Grace's conduct to refute causation under *Faulconbridge*"); Asbestos Claims Court *Order Re: Plaintiffs' Motion for Summary Judgment re: Defendants' Non-Party Affirmative Defenses* (1/18/19) ("Order re: Non-Parties") ("BNSF may not in any way, through testimony or argument, attempt to negate liability—including the element of causation—by reference to" evidence of non-party conduct, including but not limited to, conduct of W.R. Grace).

### 5. BNSF's Request to Bifurcate Punitive Damages Determination Not Appropriate.

Plaintiffs oppose any forthcoming attempt by BNSF, first disclosed yesterday, on March 14, 2024, to bifurcate the trial of BNSF's underlying liability and BNSF's punitive damages liability. Montana federal courts have "broad discretion" pursuant to Fed. R. Civ. P. Rule 42, when considering whether to allow separate trials in certain circumstances. *See, e.g., Wooten v. BNSF*, 2018 WL 4501741, at *2 (D. Mont. Sept. 19, 2018) (denying BNSF's motion to bifurcate). Plaintiffs' negligence claims, which include a failure to warn among other allegations, and their punitive

13

damages claims both require Plaintiffs to present proof regarding BNSF's knowledge. This common issue will be addressed through the same evidence and testimony, and represents a critical distinction from the case cited by BNSF, *Teague v. Remington Arms*. In *Teague*, there was no negligence claim at issue, rather only a strict product liability claim was advanced, which did not implicate evidence regarding the defendant's knowledge. Here, duplicating the presentation of negligence and punitive damage evidence and testimony in separate trials is not necessary, and it certainly does not serve the interests of convenience and judicial economy that Fed. R. Civ. P. Rule 42 is intended to address. *Id.* ("the Court is convinced that considerations of convenience, expeditiousness, and judicial economy all weigh heavily in favor of trying this case at one fell swoop").

Plaintiffs do not dispute that evidence of BNSF's net worth and jury instructions regarding calculation of punitive damages are not appropriate until immediately following a potential jury finding that BNSF acted with malice.

### B. Defendant's Legal Issues

First, the parties' competing Motions in *Limine* regarding evidence of remediation. *See* Doc 215 at pg 15-16.

The Court already ruled on the parties' Motion for Summary Judgment finding that disputed issues of fact preclude summary judgment for either party. These disputed issues include "BNSF's practices at the Libby railyard and the presence of asbestos and asbestos containing materials therein. A genuine dispute

14

also exists as to the scope of BNSF's activities that fall within the auspice of BNSF's transport of vermiculite." (Doc. 222, p. 16). Additionally, Defendant moves the Court to bifurcate all issues pertaining to punitive damages and requests that the Court proceed first on the issue of negligence and a resolution to Plaintiffs' Strict Liability claim. Whether to bifurcate or trifurcate is a decision reserved to the trial court's "discretion." *Id.* (citing *M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1088 (9th Cir. 2005)). The court should consider "potential prejudice to the parties, potential confusion to the jury, and the relative convenience and economy which would result." This issue of bifurcation was recently decided by the District of Montana in *Teague v. Remington Arms Co., LLC*, 2022 U.S. Dist. LEXIS 211757, at *37 (D. Mont. 2022). In *Teague*, the defendants moved to bifurcate the trial "such that punitive damages issues would be determined in a separate proceeding by the same jury immediately after the jury determines tort liability and compensatory damages." *Id.*, at *38. In determining to grant the defendant's motion to bifurcate, the Court made the following holdings:

> While Plaintiffs' product liability claim and punitive damages claims both arise out of the wrongful death of Mark Teague, the issue of punitive damages introduces issues of law and fact that are unique from Plaintiffs' liability claim—such as questions of Defendants' state of mind. These issues are irrelevant to Defendants' tort liability and, in some instances, would be prejudicial if introduced during that portion of the trial. Accordingly, the interests of convenience, avoiding prejudice, and economizing time weigh in favor of bifurcating the trial.

15

*Id.*, at *38-39. Accordingly, the Court ordered that "[t]he first phase of trial will focus on [d]efendants' liability for compensatory damages under Montana's law on strict products liability." *Id.*, at *39. The Court then held that "[i]f the jury finds for Plaintiffs in the first phase of trial, the second phase of trial will focus on [d]efendants' liability for punitive damages and determining any amount of punitive damages." *Id.*, at *40. BNSF disagrees with Plaintiffs' assertion that the factual evidence is the same and that it would necessarily prolong the trial however BNSF will reserve those arguments for the final pretrial. BNSF is including legal support in this final pretrial order merely as a response to Plaintiffs tender.

Finally, BNSF disagrees with Plaintiffs' assertion regarding evidence regarding W.R. Grace but believes argument of this issue is best reserved for a trial brief and not the final pretrial order. BNSF will present its objections to Plaintiffs' position in that document.

## IX.    Dismissals.

Plaintiffs' Proposed:

None.  There are no "requested or proposed dismissal of parties, claims or defense" as required by Local Rule 16.4(c)(9).  Inclusion of past dismissals here appears to be an attempt to improperly assert fault against non-parties.  Doc. 210, 215.  Also, this case involving malignant mesothelioma was filed on September 23, 2021.  Doc. 1.  Reference to any subsequent dismissal without prejudice on October 29, 2021, of a separate state court action for a different injury of non-malignant

16

asbestos related disease is not appropriate here. To the extent the Court includes language of past dismissals here, Plaintiffs propose the following: Any parties to this action other than BNSF have been dismissed. Doc. 43.

<u>BNSF's Proposed:</u>

Plaintiffs dismissed their claim against Robinson Insulation and Grogan. Plaintiff Walder also previously dismissed a lawsuit against BNSF for asbestos disease which was filed on November 30, 2017. BNSF's inclusion of this information is simply for a matter of completeness and acknowledgement of an action that occurring in a companion case. It had nothing to do with apportionment.

**X.     Discovery Documents.**

Plaintiffs may offer the following discovery documents:

1. Plaintiffs' Initial Disclosures and Supplemental thereto; February 25, 2022 and March 30, 2022

2. Defendant's Initial Disclosures and Supplementals thereto; February 25, 2022; April 9, 2022; April 23, 2022; June 6, 2022; July 20; 2022; July 25, 2022; August 5, 2022; December 21, 2022; and June 14, 2023.

3. Plaintiff Walder's Responses to BNSF's First and Third Request for Production, Answers to First Interrogatories, and Supplementals thereto; March 22, 2022; April 8, 2022; April 25, 2022; June 9, 2022; October 26, 2022; September 13, 2023; and February 23, 2024.

4. Plaintiff Wells' Responses to BNSF's First and Third Request for Production, Answers to First Interrogatories, and Supplementals thereto; March 22, 2022; April 8, 2022; April 25, 2022, June 9, 2022; October 26, 2022; September 13, 2023; and February 23, 2024.

5. BNSF's Responses to Plaintiff's First and Second Discovery Requests and Supplementals hereto; June 8, 2022; November 30, 2022, March 16, 2023, and April 10, 2023.

Defendant may offer the following discovery documents:

1. Plaintiffs' Answers and Supplemental Answers to Defendants' Interrogatories, Requests for Production of Documents, and Requests for Admissions as to Wells and Walder.

## XI. Estimate of Trial Time

The parties estimate that Plaintiffs will require 6 days of trial to complete their case in chief. Defendant estimates it will require 6 days of trial to complete its case in chief.

## XII. Witnesses

Attached as Exhibit 1 is Plaintiffs' May Call Witness List. Attached as Exhibit 2 is Defendant's May Call Witness List. Attached to the Witness lists are Plaintiffs' and Defendant's deposition designations, objections and counter-designations.

## XIII. Exhibits

Attached as Exhibit 3 is Plaintiffs' May Offer Exhibit List.  Attached as Exhibit 4 is Defendant's May Offer Exhibit List.

## XIV. Supersession.

This Order supersedes the pleadings in this matter.

DATED this 19th day of March, 2024.

Approved as to form and content:

McGARVEY LAW

 /s/ Jinnifer J. Mariman
Attorney for Plaintiffs

Brian Morris,
Chief District Judge

KNIGHT NICASTRO MACKAY, LLC

 /s/ Anthony M. Nicastro           Attorney for Defendant

19