Chad M. Knight
Anthony M. Nicastro
Cole R. Anderson
KNIGHT NICASTRO MACKAY, LLC
304 W. 10th Street
Kansas City, MO 64105
Email: knight@knightnicastro.com
       nicastro@knightnicastro.com
       anderson@knightnicastro.com
Telephone: (720) 770-6235
Facsimile: (816) 396-6233
**ATTORNEYS FOR DEFENDANT
BNSF RAILWAY COMPANY**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| JACKSON WELLS, as Personal Representative for the Estate of THOMAS E. WELLS, deceased; and JUDITH HEMPHILL, as Personal Representative for the Estate of JOYCE H. WALDER, deceased,<br><br>Plaintiffs,<br><br>vs.<br><br>BNSF RAILWAY COMPANY, a Delaware corporation; and DOES A-Z,<br><br>Defendants. | Case No.: 4:21-cv-00097-BMM<br><br>**DEFENDANT BNSF RAILWAY COMPANY'S BRIEF IN RESPONSE TO PLAINTIFFS' MOTION IN LIMINE RE: TRESPASS** |

1

COMES NOW, Defendant BNSF Railway Company ("BNSF"), by and through its counsel of record, Knight Nicastro MacKay, LLC, and hereby submits its Brief in Response to Plaintiffs' Motion in Limine Re: Trespass as follows:

## INTRODUCTION

Plaintiffs' Motion in Limine improperly claims that *Limberhand v. Big Ditch Co.,* 218 Mont. 132, 706 P.2d 491 (1985) controls the issue of whether the Decedent Plaintiffs' status as trespassers is relevant to determining BNSF's duty of care in this matter. Plaintiffs also incorrectly argue that BNSF should not be able to use the term "trespass" as it would be inadmissible under Fed. R. Evid. 403 because it would be "without any legal consequence to this case." Doc. 287, at 6. Additionally, Plaintiffs are misguided in their unsupported assertion that BNSF waived the issue of the Decedent Plaintiffs' status as trespassers by not including the issue as an affirmative defense.

The *Limberhand* decision does not control in this matter because the Decedent Plaintiffs' alleged exposures from their trespasses on BNSF's properties pre-date the *Limberhand* decision. For decades prior to *Limberhand* and during the periods of the Decedent Plaintiffs' residency in Libby, the controlling law was that a landowner did not owe a duty of care to trespassers beyond the duty to refrain from intentional injury. Alternatively, if the Court is to apply the current law, the Decedent Plaintiffs' status as trespassers is still relevant because they were on BNSF's property for

2

recreational purposes, in which BNSF likewise owed them "no duty of care with respect to the condition of the property" under Mont. Code Ann. § 70-16-302(1). Further, the issue of the Decedent Plaintiffs' status as trespassers is not an affirmative defense. Rather, it is well established law that this is an issue of legal duty that Plaintiffs have the burden of proving as an element of their negligence claim.

Accordingly, the Decedent Plaintiffs' status as trespassers is a proper issue for trial as it goes directly to whether BNSF owed them a duty of care for the alleged exposures to asbestos that occurred while they were on BNSF's properties without permission (an element of Plaintiffs' negligence claim they must prove) and BNSF should be able to use the term "trespass." Therefore, Plaintiffs' Motion in Limine should be denied.

## **MOTION IN LIMINE STANDARD**

"While motions in limine are generally disfavored, '[t]he purpose of a motion in limine is to allow the court to rule on issues pertaining to evidence in advance of trial in order to avoid delay and ensure an even-handed and expeditious trial.'" *Madrigal v. Allstate Indem. Co.*, 2015 U.S. Dist. LEXIS 201863, at *3-4 (C.D. Cal. 2015) (citations omitted). "A motion in limine 'should be granted only if the evidence is clearly not admissible for any purpose. If there is any question on the issue, rather than barring the evidence before trial, the court should reserve ruling

on questions of admissibility until they actually arise, in the context of the trial.'" *Id.*, at *2 (citation omitted). "A motion in limine is not the proper vehicle to resolve substantive issues, to test issues of law, or to address or narrow the issues to be tried." *Id.*

## ARGUMENT

**I.  The law in place at the time of Plaintiffs' alleged injuries is controlling and imposes no duty on BNSF to trespassers.**

"The substantive rights between parties to an action are determined by the law in effect on the date of the injury." *Anderson v. Werner Enters., Inc.*, 1998 MT 333, ¶ 28, 292 Mont. 284, 972 P.2d 806; *See Bell v. Glock, Inc. (USA)*, 92 F. Supp. 2d 1067, 1068-69 (D. Mont. 2000) (holding that a Montana federal court sitting in diversity applies the law " that existed on the date of injury [which] governs the substantive rights of the parties."); *see also Bell*, 92 F. Supp. 2d at 1069 ("[A] statute is not applied retroactively unless the legislature clearly expressed its intent to do so."). "No law contained in any of the statutes of Montana is retroactive unless expressly so declared." Mont. Code Ann. § 1-2-109.

The common law rule prior to the *Limberhand* decision cited by Plaintiffs was that for trespassers, the landowner only owes the duty "to refrain from any willful or wanton act causing injury to his person or chattels…." *Beinhorn v. Griswold*, 27 Mont. 79, 91, 69 P. 557, 559 (1902); *See Conway v. Monidah Trust*, 47 Mont. 269, 277, 132 P. 26, 27 (1913) ("It is the undoubted rule at common law

4

that the owner of real property owes no duty to trespassers, other than to refrain from intentional injury."). This rule's persistence in Montana law throughout the majority of the 20th century is evidenced by the Montana Supreme Court's 1980 decision in *Rennick v. Hoover*, where the Court held that "[t]he duty imposed upon a property owner in Montana continues to be dependent on the status of the injured party, either invitee, licensee or trespasser." 186 Mont. 167, 170, 606 P.2d 1079, 1081 (1980).

In 1981, the Montana Supreme Court held that Mont. Code Ann. § 27-1-701 prevented distinguishing between invitees and social guests in determining liability. *Corrigan v. Janney*, 192 Mont. 99, 105, 626 P.2d 838, 841 (1981). Then in 1985, the Montana Supreme Court held in *Limberhand v. Big Ditch Co.* that the test for determining the duty owed by a landowner to an injured party is "not the status of the injured party but the exercise of ordinary care in the circumstances by the landowner." 218 Mont. 132, 140, 706 P.2d 491, 496 (1985); *See Steichen v. Talcott Props., LLC*, 2013 MT 2, ¶ 15, 368 Mont. 169, 292 P.3d 458 (holding that before *Limberhand*, "[s]uch status distinctions—invitee, licensee, trespasser—were formerly applied to the injured party in premises liability cases to determine whether the property owner had a duty.").

Here, neither Ms. Walder nor Mr. Wells lived in Libby after 1978. **Ex. A**: Pl. Walders Ans. to BNSF 1st ROGS, Int. No. 1; **Ex. B**: Pl. Wells Supp. Ans. to BNSF 1st ROGS, Int. No. 1. Thus, at all times relevant to their claims of asbestos exposure

while trespassing on BNSF's properties in the greater Libby area, the controlling law in Montana was that landowners did not owe a duty of care to trespassers beyond refraining from any willful or wanton act. *See Rennick*, 186 Mont. at 170, 606 P.2d at 1081. The fact that the Decedent Plaintiffs trespassed on BNSF's property is therefore relevant in determining whether BNSF owed a duty of care to the Plaintiffs for these specific alleged exposures. Accordingly, Plaintiffs' Motion in Limine should be denied.

**II. Alternatively, if the current law in Montana applies, Mont. Code Ann. § 27-1-701 and *Limberhand* are inapplicable and the Decedent Plaintiffs' status as trespassers is still relevant because the Decedent Plaintiffs were trespassing on BNSF's property for "recreational purposes" under § 70-16-302.**

The current law in Montana differentiates the duty of a landowner based on the reason the injured party was on the property. For persons on another landowner's property for recreational purposes while injured, the landowner is only liable to the injured party for willful and wanton misconduct:

> A person who uses property, including property owned or leased by a public entity, for recreational purposes, with or without permission, does so without any assurance from the landowner that the property is safe for any purpose if the person does not give a valuable consideration to the landowner in exchange for the recreational use of the property. **The landowner owes the person no duty of care with respect to the condition of the property**, except that the landowner is liable to the person for any injury to person or property for an act or omission that constitutes willful or wanton misconduct.

Mont. Code Ann. § 70-16-302(1) (emphasis added). *See Jobe v. City of Polson*, 2004 MT 183, ¶ 16, 322 Mont. 157, 161, 94 P.3d 743, 746 (holding that § 70-16-302

applies because it was undisputed that the plaintiff was using the defendant's property "for recreational purposes without paying any consideration for the privilege."); *see also Saari v. Winter Sports*, 2003 MT 31, ¶¶ 23, 314 Mont. 212, 220, 64 P.3d 1038, 1044. In *Saari*, the plaintiff argued against summary judgment in the district court's proceedings on the basis that the defendant had a "general duty of care regarding the management of its property, as set forth in § 27-1-701, MCA." *Id.*, ¶ 26. The Montana Supreme Court rejected this argument and held that the duty imposed by § 27-1-701 "**is the very duty from which certain landowners are exempt from liability, under certain circumstances, under § 70-16-302, MCA.**" *Id.* Accordingly, the Montana Supreme Court affirmed the district court's grant of summary judgment to the defendant because § 70-16-302 "expressly provides that a landowner owes a person using property for recreational purposes no duty of care regarding the condition of the property even where the injured person uses the property without permission." *Id.*, ¶¶ 23, 27.

Mont. Code Ann. § 70-16-302 defines "Recreational purposes" to include "hunting, fishing, swimming, boating, waterskiing, camping, picnicking, pleasure driving, biking, winter sports, hiking, touring or viewing cultural and historical sites and monuments, spelunking, or other pleasure expeditions." Mont. Code Ann. § 70-16-301. The all encompassing "other pleasure expeditions" was interpreted by the Montana Supreme Court in *Kapphan v. Vincent*, 2009 Mont. LEXIS 532, at *10

(2009).[1] There, the Court rejected the plaintiff's argument that "other pleasure expeditions" should be interpreted in a highly technical manner as that would be "contrary to logic and the plain usage of language." *Id*. Additionally, the Court held that "recreational purpose" in general could apply to not only the well-recognized sports that people play, but "a variety of other *pursuits* which are 'recreational' in nature." *Id.*

The railroad tracks in and around Libby at the times of the Decedent Plaintiffs' alleged exposures were BNSF's private property. The record shows that BNSF had "No Trespassing" signs around its Libby railyard and adjacent tracks and employees would frequently tell people that were using the tracks for recreational purposes that they were trespassing. **Ex. C**: Dep. Bill Obermayer, Nov. 8, 2016, at 31:17-22; 32:9-16; 32:24-33:1:

> A. And maybe possibly like if a kid was walking, it was part of your duty to go and actually run them out of there so they wouldn't get hurt.
>
> Q. So did you personally ever run people out of there and tell them they were trespassing?
>
> A. Absolutely.
>
> …
>
> Q. Sure. And what would the -- the kids and -- what would they be doing when they were trespassing?

---

[1] BNSF does not cite the *Kapphan* decision as controlling precedent on Mont. Code. Ann. § 70-16-301 due to its designation as a non-cite memorandum. Instead, BNSF's discussion of *Kapphan* is offered for the limited instructive purpose of interpreting the statute's definition of "Recreational purposes."

> A. Well, like the railroad and the tracks are right on the river, and they might go down to the river to play or they're taking a shortcut to go to their house because between the railroad and the river there were houses, and the kids would cross going to their house, of course, like kids do.

See also **Ex. D**: Dep. Darrel Dusek, Nov. 9, 2016, at 41:8-42:3 (testifying that it was BNSF's policy to prevent trespassers who "cut across the tracks" or were trying to "walk down the rail."); **Ex. E**: Dep. Robert Barker, Jr., Nov. 7, 2016, at 90:19-91:7; 91:23-92:10 (testifying that BNSF management did not want almost daily trespassers walking across the tracks or railyard).

Plaintiff Walder's responses to BNSF's Interrogatories state that she "spent considerable time on and around BNSF's tracks as she would walk the tracks along the Kootenai River to get to Kootenai Falls and the bridge." **Ex. A**, at Int. No. 4. Likewise, Plaintiff Wells' responses state that from June to November of 1978, "he would reportedly walk along the railroad tracks regularly." **Ex. B**, at Int. No. 4. Mr. Wells' perpetuation testimony shows that the recreational activities and pursuits he walked the tracks for included fishing and swimming in the Kootenai River and walking to downtown Libby. **Ex. F**: Dep. Thomas Wells, March 25, 2020, at 20:19-21:24; *see also* **Ex. G**: Dep. Sean Wells, July 7, 2022, at 11:10-13 (testifying that Mr. Wells "would walk on the tracks to go downtown to have a drink with friends, he'd walk to his fishing holes to fish after work.").

There can be no doubt that Ms. Walder used the railroad tracks for a "recreational purpose" under § 70-16-301 to reach the Kootenai Falls and the Kootenai Falls suspension bridge. Given the over 11 miles of track between Kootenai Falls and Libby, Ms. Walder's use of the track could easily constitute "hiking" or "touring" as explicitly enumerated in § 70-16-301. Additionally, it could also fall under "viewing cultural and historical sites and monuments" due to the fact that "[t]he area within the vicinity of the Kootenai Falls and the swinging bridge is culturally significant to the Kootenai Tribe of Idaho and the Confederated Salish and Kootenai Tribes." United States Forrest Service, *Kootenai Falls and Swinging Bridge*, Kootenai National Forest (April 1, 2024) https://www.fs.usda.gov/detailfull/kootenai/specialplaces/?cid=FSEPRD1008852#:~:text=The%20area%20within%20the%20vicinity,Confederated%20Salish%20and%20Kootenai%20Tribes. Finally, Ms. Walder's use of the tracks to reach the falls and bridge would also fall under the catch-all "other pleasure expeditions" under § 70-16-301. Merriam-Webster's dictionary defines "expedition" as "a journey or excursion undertaken for a specific purpose." Merriam-Webster, *Expedition* (Apr. 1, 2024) https://www.merriam-webster.com/dictionary/expedition#:~:text=%3A%20a%20journey%20or%20excursion%20undertaken,%3A%20efficient%20promptness%20%3A%20speed. "Journey" is defined as the "act of traveling from one place to another." Oxford

Learner's Dictionaries, *Journey* (Apr. 1, 2024) https://www.oxfordlearnersdictionaries.com/us/definition/english/journey_1#:~:text=journey%20an%20act%20of%20travelling,difficult%20journey%20across%20the%20mountain. Thus, Ms. Walder's travel from Libby to the Kootenai Falls on the railroad tracks falls under "other pleasure expeditions" not only because of the "plain usage" of the statute's language, but also because it is the exact type of "other *pursuits* which are recreational in nature" contemplated by the Montana Supreme Court in *Kapphan*. *Kapphan*, at *10.

Likewise, Mr. Wells' purpose of walking on BNSF's tracks to swim in or fish the Kootenai River would also constitute a "recreational purpose" under § 70-16-301 as the purposes of swimming and fishing are expressly stated in the statute. Additionally, Mr. Wells' use of the tracks to travel to the bars in downtown Libby would also fall within the ambit of an "other pleasure expedition" under § 70-16-301. Mr. Wells testified that since he and his friends "were working a lot, [they] would [] go out after work and look for cold -- cold beer to drink." **Ex. F**, at 25:3-5. He further testified that "he never walked the railroad tracks on any sort of professional basis." *Id.*, at 73:8-10. Mr. Wells' testimony as a whole shows that he "traveled from one place to another" on BNSF's property to reach a destination for the pleasurable purpose of enjoying a beer after work with friends. His pursuit of

11

this activity cannot be characterized as anything other than "recreational in nature." *See Kapphan*, at *10.

Both Ms. Walder and Mr. Wells' purposes for trespassing on BNSF's properties constitutes a "recreational purpose" under § 70-16-301. Thus, BNSF did not owe either Plaintiff a duty of care with respect to the condition of the property. It follows that the Decedent Plaintiffs' trespass is relevant to whether BNSF owed the Plaintiffs a duty of care for the time they spent on BNSF's property without a license and BNSF should be able to use the term "trespass." Therefore, Plaintiffs' Motion in Limine should be denied.

**III.   The Decedent Plaintiffs' status as trespassers is a proper issue of legal duty for trial that Plaintiffs have the burden of proving as an element of their negligence claim.**

It is undisputed that in this case, Plaintiffs have asserted a negligence claim against BNSF. For a negligence claim, plaintiffs must prove the essential elements of (1) a legal duty owed by the defendant to the plaintiffs; (2) a breach of that duty; (3) harm caused by the breach of duty; and (4) damages. *Md. Cas. Co. v. Asbestos Claims Court*, 399 Mont. 279, 297 (S. Ct. MT 2020); *Scott v. Robson*, 182 Mont. 528, 535-536 (S. Ct. MT 1979); *Garcon v. Union Pac. R.R. Co.*, 2011 U.S. Dist. LEXIS 126961 at *4-*5 (Dist. Ct. of AZ 2011). Plaintiffs "must introduce evidence proving or tending to prove each of these material elements in order to have the case submitted to the jury." *Scott*, 182 Mont. at 536.

Also, the issue of Plaintiffs' status as trespassers is an issue of legal duty that Plaintiffs must prove. *See Garcon*, 2011 U.S. Dist. LEXIS 126961 at *4-*11 (the issue of the plaintiffs as trespassers was addressed for the duty owed by the defendant railroad to the plaintiffs and not to determine if the issue should have been included as an affirmative defense. Judgment was entered in favor of the defendant railroad when the plaintiffs failed to prove the duty element of their negligence claim.). *See also Steichen*, 2013 MT 2 at ¶ 15 ("[s]uch status distinctions—invitee, licensee, trespasser—were formerly applied to the injured party in premises liability cases to determine whether the property owner had a duty.").

Plaintiffs' assertion that BNSF waived the issue of the Decedent Plaintiffs' status as trespassers by not including the issue as an affirmative defense is incorrect and unfounded. Indeed, the *Shoemaker* case cited by Plaintiffs fails to provide any support for Plaintiffs' assertion as *Shoemaker* involved whether statute of limitations, identified as an affirmative defense by MT R. Civ. P. 8(c)(1), was pled by the defendants as an affirmative defense for a breach of deed of restriction claim made by the plaintiff. *Meadow Lake Estates Homeowners Ass'n v. Shoemaker*, 341 Mont. 345, 347 and 353 (S. Ct. MT 2007). No analysis, discussion, arguments, or rulings were made in *Shoemaker* pertaining to trespasser status or legal duty. *Id*.

In this case, the issue of the Decedent Plaintiffs' status as trespassers is not an affirmative defense. Rather, it is well established law that this is an issue of legal

13

duty that Plaintiffs have the burden of proving as an element of their claims. Thus, the Decedent Plaintiffs' status as trespassers is a proper issue for trial that defines Plaintiffs' burden of proof and directly relates to whether BNSF owed them a duty of care for the alleged exposures to asbestos that occurred while they were on BNSF's properties without permission. As a result, Plaintiffs' Motion in Limine should be denied.

## CONCLUSION

Accordingly, BNSF respectfully requests that Plaintiffs' Motion in Limine regarding trespass be denied.

Dated this 5th day of April, 2024.

                                         KNIGHT NICASTRO MACKAY, LLC

                                         By: /s/ Anthony M. Nicastro
                                               Chad M. Knight
                                               Anthony M. Nicastro
                                               Cole R. Anderson
                                               *Attorneys for Defendant*
                                               *BNSF Railway Company*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with L.R. 7.1(d)(2), and that the number of words in the brief, excluding caption, certificates of compliance and service, table of contents and authorities, and exhibit index, is less than 6,500 words.

KNIGHT NICASTRO MACKAY, LLC

By: /s/ Anthony M. Nicastro
    Anthony M. Nicastro

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of April, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Roger Sullivan
Jinnifer Jeresek Mariman
Ethan Welder
McGARVEY LAW
345 First Avenue East
Kalispell, MT 59901
rsullivan@mcgarveylaw.com
jmariman@mcgarveylaw.com
ewelder@mcgarveylaw.com

Alexandra Bailey Abston (PHV)
Rachel Lanier (PHV)
Sam Taylor, II (PHV)
LANIER LAW FIRM, P.C.
10940 W. Sam Houston Parkway N.
Suite 100
Houston, TX 77064
Alex.abston@lanierlawfirm.com
Rachel.lanier@lanierlawfirm.com
Sam.taylor@lanierlawfirm.com
*Attorneys for Plaintiffs*

KNIGHT NICASTRO MACKAY, LLC

By: /s/ Anthony M. Nicastro
     Anthony M. Nicastro