Chad M. Knight
Anthony M. Nicastro
Cole R. Anderson
KNIGHT NICASTRO MACKAY, LLC
304 W. 10th Street
Kansas City, MO 64105
Email: knight@knightnicastro.com
         nicastro@knightnicastro.com
         anderson@knightnicastro.com
Telephone: (720) 770-6235
Facsimile: (816) 396-6233
**ATTORNEYS FOR DEFENDANT
BNSF RAILWAY COMPANY**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| JACKSON WELLS, as Personal Representative for the Estate of THOMAS E. WELLS, deceased; and JUDITH HEMPHILL, as Personal Representative for the Estate of JOYCE H. WALDER, deceased, <br><br> Plaintiffs, <br><br> vs. <br><br> BNSF RAILWAY COMPANY, a Delaware corporation; and DOES A-Z, <br><br> Defendants. | Case No.:  4:21-cv-00097-BMM <br><br> **DEFENDANT BNSF RAILWAY COMPANY'S MOTION FOR CONTINUANCE AND CHANGE OF VENUE** |

1

COMES NOW Defendant, BNSF Railway Company ("BNSF"), by and through its counsel of record, Knight Nicastro MacKay, LLC, and hereby submits its Motion for Continuance and Change of Venue as follows:

## **INTRODUCTION**

At 10:30 PM on April 6, 2024, the Associated Press released an article on its website titled "Victims of Montana asbestos pollution that killed hundreds take Warren Buffet's railroad to court." The article has since been re-posted by dozens of other national media outlets, including Yahoo Finance, The Washington Post, The Washington Times, The Hill, The San Francisco Chronicle, and MSN.

The article's explicit statements show that Plaintiffs' counsel offered the Associated Press information that this Court has still yet to determine whether to exclude, namely information regarding other lawsuits against BNSF from Libby claimants and settlements BNSF has made. The article includes Counsel's statements in the context of an overall narrative that advances Plaintiffs' theories of liability in this matter, namely that BNSF's activities created "clouds of contaminated dust" that were then inhaled by the citizens of Libby. There can be no doubt that this inflammatory article will prevent BNSF from obtaining a fair and impartial trial and will have prejudiced the potential jurors in this case. This Court cautioned the parties at the April 5, 2024 telephonic conference that it did not want the parties to try this case in the court of public opinion, yet Plaintiffs' Counsel's

2

contributions to this article do exactly that. Accordingly, BNSF moves to have this trial continued until the prejudicial effect of this article will no longer affect its right to a fair and impartial jury. Similarly, BNSF moves to have the venue changed to a Court outside the state of Montana, where the public would have been less likely to have read and discussed the article.

## ARGUMENT

I.   **Plaintiffs Counsel's improper communications to the Associated Press regarding the upcoming trial have resulted in widespread inflammatory press coverage that will reach all members of the jury pool and prevent BNSF from being afforded a fair trial.**

"A trial court may grant a motion for change of venue if the record demonstrates either presumed prejudice in the community or actual prejudice in jurors. *Mine O'Mine, Inc. v. Calmese*, 2010 U.S. Dist. LEXIS 70263, at *3-4 (D. Nev. 2010) (citing *Harris v. Pulley*, 885 F.2d 1354, 1361 (9th Cir. 1989)). Prejudice is presumed when the record demonstrates that the community where the trial was held was "saturated" with prejudicial and inflammatory media publicity about the case. *Harris*, 885 F.2d at 1361. "Under such circumstances, it is not necessary to demonstrate actual bias." *Id.*; *see also Sheppard v. Maxwell*, 384 U.S. 333, 363, 86 S. Ct. 1507, 16 L. Ed. 2d 600 (1966) (holding that where there is a reasonable likelihood that pre-trial news coverage will prevent a fair trial, a trial judge can either transfer or continue the case). A transfer becomes necessary when prejudicial news coverage or an "inflamed community atmosphere" forecloses the possibility of

sitting an impartial jury. *Harris*, 885 F.2d at 1361; *See Chavers v. Miller-Stout*, 2006 U.S. Dist. LEXIS 78383, at *7 (E.D. Wash. 2006) ("Regarding prejudice caused by media coverage, Plaintiff must show a reasonable likelihood that inflammatory publicity immediately before trial warrants a change of venue."); *Gotbaum v. City of Phoenix*, 617 F. Supp. 2d 878, 882 (D. Ariz. 2008) ("To overcome the presumption that jury pool members are impartial, the movant "must show saturating and inflammatory press coverage that would reach virtually all members of the jury pool and lead a court to conclude that the pool as a whole has been adversely influenced.").

Here, the prejudicial nature of this article is evident from the title - "Victims of Montana asbestos pollution that killed hundreds take Warren Buffet's railroad to court." Associated Press, *Victims of Montana asbestos pollution that killed hundreds take Warren Buffet's railroad to court*, (Apr. 7, 2024) https://apnews.com/article/asbestos-libby-montana-bnsf-railroad-trial-e9b7587c0cc78fb93afca24436639eb6. The article mirrors Plaintiffs' theory of this case without referencing or citing to any of the evidence in the record, and portrays the correctness of Plaintiffs' exposure allegations from BNSF's operations in Libby as a foregone conclusion. *See Id.*, (""At some point, probably everybody got exposed to it,' [Mr. Resch] said, speaking of asbestos-tainted vermiculite. 'There was piles of it along the railroad tracks. ... You would get clouds of dust blowing around

downtown.'"); *see also Id.* (Article states that BNSF is "one of the major corporate players in the tragedy.").

The article begins by stating the Paul Resch, the husband of Suzanne Resch, a client represented by Kovacich Snipes Johnson, used to play baseball "mere yards from railroad tracks where trains kicked up clouds of dust as they hauled the contaminated material from a mountaintop mine through the northwestern Montana town of Libby." The alleged "clouds of dust" from BNSF's operations is repeated consistently through the article. *See Id*., ("BNSF Railway faces accusations of wrongful death for failing to control clouds of contaminated dust."); ("There was piles of it along the railroad tracks. ... You would get clouds of dust blowing around downtown."); ("Texas-based BNSF faces accusations of negligence and wrongful death for failing to control clouds of contaminated dust that used to swirl from the rail yard and settle across Libby's neighborhoods.") The video included on the article's webpage shows Dr. Lee Morrissette talking about BNSF's operations, where she states "a lot of [kids] rode their bikes along the railroad track, because it was a big open area where you could go as fast as you could for long distances, and so, in doing that, they stirred up a lot of dust, and inhaled it at that time, so we consider that an exposure." The video also shows Paul Resch stating that "in the greater area of that plant and what have you, railroad tracks, whenever the wind would blow it would – make a little cloud of dust you know, it was definitely getting

airborne at some point…." The article gives credibility to Plaintiffs' allegations all while stating the horrific nature of asbestos related diseases. *See Id.* ("Today, Resch, 61, is battling an asbestos-related disease that has severely scarred his left lung. He's easily winded, quickly tires and knows there is no cure for an illness that could suffocate him over time."). Descriptions of this kind regarding the significance and potentially fatal nature of asbestos related diseases will no doubt garner sympathy for the Plaintiffs among the jury pool, further distancing them from impartiality upon arriving in the courtroom for jury selection on April 8.

The article's prejudice is also highlighted by the fact that it discusses the exact evidence regarding BNSF's voluntary remediation of the Libby railyard that the Court has still yet to rule on:

> During a yearslong cleanup of the Libby rail yard that began in 2003, crews excavated nearly the entire yard, removing about 18,000 tons of contaminated soil. In 2020, BNSF signed a consent decree with federal authorities resolving its cleanup work in Libby, the nearby town of Troy and along 42 miles (68 kilometers) of railroad right-of-way.

Associated Press, *EPA moves to end asbestos cleanup along Montana railroad*, (April 7, 2022) https://apnews.com/article/health-business-environment -environment-montana-0bba26b6e441437c70823cc54584a12e. It also contains a link to an article from March 23, 2022, titled "EPA moves to end asbestos cleanup along Montana railroad." Associated Press, *EPA moves to end asbestos cleanup along Montana railroad*, (April 7, 2022) https://apnews.com/ article/health-

business-environment         -environment-montana-0bba26b6e441437c70823cc5458

4a12e. The main photograph for the article, which is pictured with the link in the

original article, shows multiple remediation workers wearing gas mask style

respirators and hazmat suits inside of a fenced off area with large machinery. BNSF

explained at length why evidence regarding the extent of the railyard should be kept

out at trial due to the fact that the soil and air sampling from the railyard does not

reflect that such a large clean up needed to be done pursuant to the EPA standards

for contamination. The trial brief further explained that if the jury were to hear that

"18,000" tons of soil were removed or see the pictures regarding the railyard, it

would presume that the cleanup was warranted by the testing or mandated by the

EPA. Now, due to the false statements in the article that all of the soil removed was

contaminated, the jury pool has already heard evidence for which this Court has not

yet ruled on the admissibility.

The overwhelming bias of the article is shown by the only one line dedicated

to BNSF's defense in this case – "Attorneys for the railroad — owned by Warren

Buffet's Berkshire Hathaway Inc. — deny responsibility." The article then goes on

to state:

> In the months leading up to this week's trial, attorneys for BNSF repeatedly
> tried to deflect blame from the company, including by pointing to the actions
> of W.R. Grace and Co., which owned the mine from 1963 until it closed. They
> also questioned whether other asbestos sources could have caused the
> plaintiffs' illnesses and suggested Walder and Wells would have been
> trespassing on railroad property.

Associated Press, *EPA moves to end asbestos cleanup along Montana railroad*, (April 7, 2022) https://apnews.com/ article/health-business-environment - environment-montana-0bba26b6e 441437c70823cc54584a12e. This improperly casts blame on BNSF and its attorneys for exercising its right to vigorously defend itself against claims brought against it, an argument which is routinely excluded from trials due to the unduly prejudicial impact it has on a defendant. *See R.J. Reynolds Tobacco Co. v. Robinson*, 216 So. 3d 674, 682 (Fla. Dist. Ct. App. 2017) ("A plaintiff may not suggest to the jury that a defendant is somehow acting improperly by defending itself at trial or that a defendant should be punished for contesting damages."). Concurrent with its attack on BNSF's counsel, the article attempts to diminish the verdict of the 2023 Qui Tam trial against the CARD clinic, in which a Montana jury unanimously found that the clinic submitted hundreds of false claims for Medicare and Medicaid reimbursement. The article states, without any source or reference, that "[s]ome asbestos victims viewed the case as a ploy to discredit the clinic and undermine lawsuits against the railroad." Associated Press, *Victims of Montana asbestos pollution that killed hundreds take Warren Buffet's railroad to court*, (Apr. 7, 2024) https://apnews.com/ article/asbestos-libby-montana-bnsf-railroad-trial-e9b7587c0cc78fb93afca24436639eb6. The article is undoubtably inflammatory and will prejudice BNSF in that the jury will already have

8

been exposed to the incomplete and incorrect information in the article before the case even starts.

It is also beyond any reasonable argument that the jury pool has been saturated with dozens of news outlets that have published the article. It was originally published in the Associated Press, a global news agency that syndicates its content to newspapers and other media outlets around the world. As expected, the article, and the video attached to the article, have been widely publicized in dozens of other online media sources available to the jury pool. These other new sources include, but are not limited to: Yahoo Finance, *Victims of Montana asbestos pollution that killed hundreds take Warren Buffet's railroad to court*, (Apr. 7, 2024) https://ca.finance.yahoo.com/news/victims-montana-asbestos-pollution-killed-043158750.html; Idaho Press, *Victims of Montana asbestos pollution that killed hundreds take Warren Buffet's railroad to court*, (Apr. 7, 2024) https://www.idahopress.com/news/state/victims-of-montana-asbestos-pollution-that-killed-hundreds-take-warren-buffetts-railroad-to-court/article_d7ce7862-7ae1-56e3-a86c-de7c9c2d751b.html; San Francisco Chronicle, *Victims of Montana asbestos pollution that killed hundreds take Warren Buffet's railroad to court*, (Apr. 7, 2024) https://www.sfchronicle.com/business/article/victims-of-montana-asbestos-pollution-that-killed-19389887.php; The Hill, *Victims of Montana asbestos pollution that killed hundreds take Warren Buffet's railroad to court*, (Apr. 7, 2024)

https://thehill.com/ homenews/ap/ap-science/ap-victims-of-montana-asbestos-pollution-that-killed-hundreds-take-warren-buffets-railroad-to-court/; MSN, *Victims of Montana asbestos pollution that killed hundreds take Warren Buffet's railroad to court*, (Apr. 7, 2024) https://www.msn.com/en-gb/news/uknews/victims-of-montana-asbestos-pollution-that-killed-hundreds-take-warren-buffet-s-railroad-to-court/ar-BB1lc8qY; The Washington Post, *Victims of Montana asbestos pollution that killed hundreds take Warren Buffet's railroad to court*, (Apr. 7, 2024) https://www.washingtonpost.com/business/2024/04/07/ asbestos-libby-montana-bnsf-railroad-trial/aaaab208-f497-11ee-a4c9-88e569a98b58_story.html; The Washington Times, *Victims of Montana asbestos pollution that killed hundreds take Warren Buffet's railroad to court*, (Apr. 7, 2024) https://www.washingtontimes.com/news/2024/apr/7/montana-victims-of-asbestos-pollution-that-killed-/.

The foregoing establishes that prejudice in the jury pool should be presumed, therefore requiring that the venue be changed in order to ensure that BNSF is afforded a fair trial. It follows that a continuance would also be warranted due to the minimal time between the release of the article and the scheduled start of trial.

**II.   The attorney contributions to the article's substance have a substantial likelihood of materially prejudicing the trial, whether they came from Plaintiffs' counsel here or another attorney representing a different Libby Plaintiff.**

This is not the first-time attorneys from the McGarvey Firm have used the press as a tool to influence jury pools and sitting juries prior to and during BNSF trials. *See Underwood v. BNSF Ry. Co.*, 359 F. Supp. 3d 953, 955 (D. Mont. 2018). In *Underwood*, the District of Montana considered statements given by the McGarvey Law firm to the Great Falls Tribune that were quoted and used in various publications, including the Associated Press, The Western News, The Daily Inter Lake, the Flathead Beacon, NBC Montana, and Courthouse News Service. *Underwood*, 359 F. Supp. 3d at 955. BNSF moved for a protective order to prevent McGarvey from making further statements to avoid potential prejudice to the jury pool. *Id.*

The Court analyzed the question of whether the statements to the media were proper under Montana Rule of Professional Conduct 3.6[1], which states:

> A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

*See Underwood*, 359 F. Supp. 3d at 956. The Court held that "in determining the risk of prejudice, the court must consider the statements themselves, the timing of the statements, and whether they were published in the jury pool." *Id.*, 359 F. Supp. 3d

---

[1] BNSF cites to the rules of professional conduct as a standard for what attorney statements to the media should be expected to materially prejudice the trial because that rule was used by the Court when a similar issue arose involving the same parties in the *Underwood* case.

at 958. The Court in *Underwood* found that McGarvey's statements would not create a substantially likelihood of prejudice because the latest publication was made fifteen months before trial. *Id.* Additionally, of the eight articles cited by BNSF, only one was published in the county where the trial was set and another was published on a state wide website. *Id.* The other six were published in local newspapers in regions outside the scope of the jury pool with one as far away as California. *Id.*

Here, the article shows ample evidence that either Plaintiffs and their counsel, or a different Libby plaintiff and their counsel, participated in the article's production by providing the Associated Press with inaccurate and inflammatory information. The article states:

> The first trial among **what attorneys say** are hundreds of lawsuits against BNSF for its alleged role polluting the Libby community is scheduled to begin Monday.
>
> …
>
> The railroad built a loading facility near the mine, performed economic analyses of vermiculite operations and helped market and develop new uses for the material, **the plaintiffs said**.
>
> …
>
> The pollution in Libby has led to civil claims from thousands of people who worked at the mine or for the railroad, their family members and others from the area.
>
> BNSF has settled some previous lawsuits for undisclosed amounts, **attorneys for plaintiffs said**.

12

Associated Press, *Victims of Montana asbestos pollution that killed hundreds take Warren Buffet's railroad to court*, (Apr. 7, 2024) https://apnews.com/article/asbestos-libby-montana-bnsf-railroad-trial-e9b7587c0cc78fb93afca24436639eb6 (emphasis added). Additionally, the article states that "[Judge Morris] also said the law doesn't support the notion that trespassing reduces a property owner's duty not to cause harm." *Id.* The Court has not made any such ruling and this statement is not supported by any Court Order available to the public.

For the first factor, the inherent prejudice of the article is explained in Section I, which is fully incorporated herein. For the statements from McGarvey's attorneys or a different Libby plaintiff's attorney in the article, it is clear that any lawyer would expect these statements to materially prejudice the jury pool against BNSF. The attorney statement that this trial is the first of "hundreds of lawsuits against BNSF for its alleged role polluting the Libby community" is aimed to inflame potential jurors and insinuate that an inference should be made between the number of lawsuits against BNSF and its liability. The attorney's intention behind this statement is only confirmed by their next statement that "BNSF has settled some previous lawsuits for undisclosed amounts." BNSF specifically moved *in limine* to exclude testimony and evidence of nonparties' claims or diseases. *See* (Doc. 124, p. 3-4). This Court held that it agreed with BNSF "that the existence of independent

claims against BNSF and evidence that nonparties suffered some asbestos-related diseases, standing alone, likely proves irrelevant to the elements Plaintiffs must prove to prevail on their claims." (Doc. 215, p. 7). The Court deferred its ruling on this motion until the time of trial, and it is not proper for an attorney to take the liberty to disseminate evidence to the public that the Court will likely exclude based on its prior ruling.  Finally, the article's statement regarding the Court's alleged ruling on the trespasser issue is clearer evidence that the McGarvey firm provided this information to the Associated Press, as that is a more case-specific topic that has only been at issue for the past few weeks. More importantly, whoever provided the Associated Press with the statement regarding the trespasser issue misrepresented the pending status of the viability of that defense and has used the media to publicly diminish BNSF's legitimate defense under Montana Law.

The article also seems to make a strategic factual supplementation to record in that it states that Mr. Resch "liked to sneak into vermiculite-filled storage bins at an adjacent rail yard…" The article later states that "[t]he plaintiffs argue the rail yard in the middle of Libby was used for storage and not transportation, meaning the railway is not exempt." The video attached to the article also features Mr. Resch stating that "the majority of [the dust] coming out of there was out of that bag plant or the storage bins whatever they want to call them." Plaintiffs in this matter have not produced any testimony or evidence that there were "storage bins" filled with

14

vermiculite in BNSF's railyard. The article therefore appears to be an attempt to bolster Plaintiffs' claim that the common carrier exception should not apply through inadmissible hearsay that is unsupported by the extensive record that already exists in this matter.

For the second factor regarding the timing of the statements, this case is factually distinct from *Underwood* because the subject article was published less than 36 hours before the trial is set to begin. Thus, unlike *Underwood* where the latest article was published 15 months before trial, here, jurors who read the article, or even the headline, will have the prejudicial and unsupported information fresh in their minds at the outset of the case and throughout the entire trial. As far as the timing is concerned, there is likely not another time for an article of this sort to be published that could be more prejudicial to BNSF.

Finally, BNSF listed in Section I numerous online publications that re-posted the full Associated Press article that are available to the potential jurors in this case. This case is therefore again significantly different from *Underwood*, where the jury pool only had access to two publications of McGarvey's statements. Beyond the news outlets cited to here by BNSF, a simple google search shows that Plaintiffs' counsel, or counsel for another Libby plaintiff, has improperly contributed to an article that is now receiving national attention and will be inescapable by the

potential jurors that the parties are set to pick from. The third factor therefore weighs in favor of BNSF.

Accordingly, all three factors from *Underwood* favor BNSF, showing that the inaccurate attorney statements to the media that include non-public information constitute information that counsel should have known had a substantial likelihood of materially prejudicing the trial.

## **CONCLUSION**

For the aforementioned reasons, BNSF respectfully requests that the Court grant its motion to continue the trial and transfer it to a venue outside the State of Montana.

Dated this 7th day of April, 2024.

KNIGHT NICASTRO MACKAY, LLC

By: /s/ Anthony M. Nicastro
   Chad M. Knight
   Anthony M. Nicastro
   Cole R. Anderson
   *Attorneys for Defendant*
   *BNSF Railway Company*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with L.R. 7.1(d)(2), and that the number of words in the brief, excluding caption, certificates of compliance and service, table of contents and authorities, and exhibit index, is less than 6,500 words.

KNIGHT NICASTRO MACKAY, LLC

By: /s/ Anthony M. Nicastro
    Anthony M. Nicastro
    *Attorneys for Defendant*
    *BNSF Railway Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of April, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Roger Sullivan
Jinnifer Jeresek Mariman
Ethan Welder
John F. Lacey
McGARVEY LAW
345 First Avenue East
Kalispell, MT 59901
rsullivan@mcgarveylaw.com
jmariman@mcgarveylaw.com
ewelder@mcgarveylaw.com
jlacey@mcgarveylaw.com

Alexandra Bailey Abston *(PHV)*
Rachel Lanier *(PHV)*
Sam Taylor, II *(PHV)*
Lanier Law Firm, P.C.
10940 W. Sam Houston Pkwy N., Ste. 100
Houston, TX 77064
Alex.abston@lanierlawfirm.com
Rachel.lanier@lanierlawfirm.com
Sam.taylor@lanierlawfirm.com
*Attorneys for Plaintiffs*

KNIGHT NICASTRO MACKAY, LLC

By: /s/ Anthony M. Nicastro
    Anthony M. Nicastro
    *Attorneys for Defendant*