Jinnifer Jeresek Mariman
Ethan Welder
John Lacey
McGARVEY LAW
345 First Avenue East
Kalispell, MT  59901
(406) 752-5566
jmariman@mcgarveylaw.com
ewelder@mcgarveylaw.com
jlacey@mcgarveylaw.com

Mark Lanier
Rachel Lanier,
Sam Taylor II
Alex Abston
LANIER LAW FIRM, PC
10940 W. Sam Houston Pkwy N., Ste. 100
Houston, TX 77064
Mark.lanier@lanierlawfirm.com
Rachel.lanier@lanierlawfirm.com
Sam.taylor@lanierlawfirm.com
Alex.abston@lanierlawfirm.com
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

| | |
|---|---|
| JACKSON WELLS, as Personal Representative for the Estate of THOMAS E. WELLS, deceased; and JUDITH HEMPHILL, as Personal Representative for the Estate of JOYCE H. WALDER, deceased,<br><br>Plaintiffs,<br><br>vs.<br><br>BNSF RAILWAY COMPANY,<br><br>Defendant. | CV-21-97-GF-BMM<br><br>**PLAINTIFFS' RESPONSE TO BNSF'S MOTION FOR CONTINUANCE AND CHANGE OF VENUE** |

# INTRODUCTION

BNSF Railway Co. ("BNSF") moved at 11:51 p.m. for a continuance or venue change based on a late-night media report that landed in Montana news outlets after 10 p.m. MST. (Docs. 329 & 330). It is not possible prior to *voir dire* to determine if a juror panel has been compromised with partiality or hostility before being called in this case. *See Gotbaum v. City of Phoenix*, 617 F. Supp. 2d 878, 881 (D. Ariz. 2008). Therefore, to succeed in its motion, BNSF must show that a *presumption* of pervasive juror prejudice is warranted. *Id.* Presumed prejudice is "rarely applicable and is reserved for 'an extreme situation.'" *Id.* (citing *Harris v. Pulley*, 885 F.2d 1354, 1361 (9th Cir. 1988). Conversely, jury pool members are "presumed to be impartial." *Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.C.t 1639 (1961).

BNSF's motion fails to show that the handful of articles the night before trial, reciting the underlying factual background of this case warrants a presumption of prejudice. Further, if any jurors, having already received a pre-admonishment from this Court to avoid media coverage related to this case, are unable to set aside any resulting bias, this Court cannot make that determination prior to *voir dire*. *Gotbaum*, 617 F. Supp. 2d at 881.

**I.     BNSF has failed to show late-night media report on the eve of trial warrants a continuance or change of venue.**

Plaintiffs' counsel became aware, *for the first time*, of BNSF'S concern about the possibility of media publication when defense counsel stated in a hearing on

Friday that he had been approached by the Associated Press. For their part, Plaintiffs' counsel had also been contacted by the Associate Press, but provided no statement other than to direct them to the public record. Plaintiffs' counsel were not aware of the nature or contents of the articles that were published until around 10 p.m. MST. Continuing a trial or moving venue without the requirement of showing prejudice is appropriate only when the media coverage has been "pervasive," covering a period of week or months leading up to trial, and ultimately amounts to a "'barrage of inflammatory publicity immediately prior to trial' amounting to a 'huge . . . wave of public passion' to warrant a presumption that the jurors selected for the trial of this matter were prejudiced." *Harris*, 885 F.2d at 1362 (quoting *Patton v. Yount*, 467 U.S. 1025, 1032-33, 104 S.Ct. 2885, 2889, 81 L.Ed. 847 (1984) (citations omitted)); *see also Skilling v. United States*, 130 S.Ct. 2896, 2917 (2010) (not even did a "sheer number of victims trigger a presumption" of prejudice where widespread community was impacted by the alleged conduct of securities fraud by Enron).

Here, BNSF has found a few articles, published by several internet news outlets (some behind paywalls) late in the evening before trial, that identify the factual circumstances underlying this case. The media account at issue is "largely factual in nature." *Harris*, 885 F. 2d 1362 (citing *Murphy*, 421 U.S. at 802, 95 S.Ct. at 2037 (pretrial publicity not prejudicial because the news articles concerning the defendant 'were . . . largely factual in nature'").

The article as reported by the Associated Press[1] consistently attributes the source of public facts reported to "the lawsuit states," "the lawsuit argues," "court records said." BNSF's motion is devoid of any support that the reported public facts came from anywhere other than the public record. Indeed, the AP's article "quoted" this Court as stating "he expects it [the trial] to last at least two weeks." The sole attorney quoted in the article is involved a different case, in a different court (confirming his trial was to begin "next month in U.S. District Court in Missoula"), is with a different law firm, and not associated in anyway with the parties or their attorneys before this Court.

With regard to the second article[2]—published by the same reporters as the first article—as this Court is well aware, Paul Resch is not a party to the instant case. Mr. Resch is also not a client of any firm before the Court in this case. Notably the only fact attributed to "attorneys for plaintiffs," is directly followed by a reference to the case before the U.S. District Court in Missoula: "BNSF has settled some previous lawsuits for undisclosed amounts, attorneys for plaintiffs

---

[1] https://apnews.com/article/bnsf-railway-libby-asbestos-vermiculite-lawsuit-25783f61a393b3aa3a7286e6aeca4356 ("Trial to begin against railroad over death sin Montana town where thousands were exposed to asbestos," By Amy Beth Hanson and Matthew Brown)

[2] https://apnews.com/article/asbestos-libby-montana-bnsf-railroad-trial-e9b7587c0cc78fb93afca24436639eb6 ("Victims of Montana asbestos pollution that killed hundreds take Warren Buffett's railroad to court," By Matthew Brown and Amy Beth Hanson)

said. A second trial against the railroad over the death of a Libby resident is scheduled for May in federal court in Missoula."

As to the facts reported in the article, all were publicly available. For example:

> The plaintiffs for the upcoming trial against BNSF, the estates of Joyce Walder and Thomas Wells, lived near the Libby rail yard and moved away decades ago. Both died in 2020 of mesothelioma, a rare lung cancer caused by asbestos that is disproportionately common in Libby. (Doc. 1 at ¶¶ 1, 11, 83)

> The mine a few miles outside town once produced up to 80% of global vermiculite supplies. It closed in 1990. Nine years later, the Environmental Protection Agency arrived in Libby and a subsequent cleanup has cost an estimated $600 million, with most covered by taxpayer money. It's ongoing, but authorities say asbestos volumes in downtown Libby's air are 100,000 times lower than when the mine was operating. Doc. 1 at ¶ 22 ("The Libby mine produced approximately 80% of the world's vermiculite ore ….")

> BNSF Railway is expected to argue that there's no proof Wells and Walder were exposed to asbestos levels above federal limits, that if they were in the rail yard they were trespassing and that Wells' and Walder's medical conditions were not caused by BNSF. (Doc. 301)

The facts described in these articles "do not reveal a 'general community or courtroom [which] is sufficiently inflammatory" to deny [BNSF] a fair trial by impartial jurors." *Id.* (quoting *Murphy*, 421 U.S. at 802, 95 S.Ct. at 2037). BSNF cannot show actual prejudice from a single media report posted at a late hour the night before trial that cannot be cured by an admonishment from the Court.

**II.    BNSF's speculative accusations of Plaintiffs' counsel are not supported.**

BNSF wrongly asserts, without support, that Plaintiffs or their attorneys made an effort to drop this late-night story to prejudice BNSF at trial. This is simply not true. And BNSF cannot prove its allegations, merely by quoting unrelated parties with different attorneys, a medical doctor who works for the CARD Clinic who is not Dr. Black but works for the CARD Clinic (an entity Plaintiffs have repeatedly asserted is irrelevant to this case involving diagnoses of mesothelioma), and "plaintiffs" statements that could easily have come from documents in the public record, including Plaintiffs' Complaint (Doc. 1) or BNSF's Trial Brief (Doc. 301). In fact, Plaintiffs' counsel made no statements to media other than to direct them to the public record.

Even if BNSF's unfounded assertions were correct (which they are not) BNSF bears the burden of showing that the brief and limited media report of this trial resulted in "actual prejudice" to deny BNSF its right to "a panel of impartial, 'indifferent' jurors'" *Id.* (quoting *Irvin*, 366 U.S. at 722, 81 S.Ct. at 1642). As such, during *voir dire*, the Court can determine if anyone in the jury pool "demonstrated actual partiality or hostility that could not be laid aside." *Murphy*, 421 U.S. at 800, 95 S.Ct. 2036. However, jurors need not be totally ignorant of the facts. *Id.* BNSF cannot hide from the factual recitation of what gave rise to these claims, nor that these claims exist, to avoid their day in court.

In order for BNSF to prevail in its complaint that last minute media attention has worked to deny its constitutional right to a fair trial, BNSF must show during *voir dire* that the jurors cannot "lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin*, 366 U.S. at 723, 81 S.Ct. at 1642-43. Notably, this Court pre-admonished the jury pool in the jury questionnaire (Doc. 266, p. 5):

> Do not read any newspaper or magazine articles, listen to any television or radio broadcasts, or view or listen to any other information related in any way to this case. Do not conduct any research or investigation concerning this case such as searching the Internet, reviewing reference materials, or consulting books or articles.

Before this Court even considers moving venue or continuing the trial, the Court should *voir dire* the jury pool to determine (a) whether any of the potential jurors even read the media story at issue, and if so, (b) whether that juror would be unable to set aside any "preconceived notions" so that she could not decide the case based on the evidence at trial. Unless and until BNSF can meet this burden, a continuance or change in venue at this late hour is inappropriate.

## III. Prejudice to Plaintiffs would be great if this case were to be delayed.

One of the factors which the Ninth Circuit requires trial court to consider in deciding motions for continuance is the inconvenience to the opposing party, the witnesses and the Court. *United States v. Flynt*, 756 F.2d 1352, 1358–59 (9th Cir.), amended, 764 F.2d 675 (9th Cir. 1985). The inconvenience—indeed, the prejudice

to Plaintiffs—if the Court were to continue this this case is manifest. Plaintiffs, their counsel and witnesses have traveled to Helena from all over the country to try this case this week. This trial, which will last for three weeks, represents the culmination of thousands of hours of effort to gather fact and expert witnesses and to compile hundreds of exhibits in order to present the Plaintiffs' case to a jury. Likewise, this Court has no doubt set-aside this time to hear this case. Defendants seek a continuance based on unanticipated eleventh-hour media report but there is no guarantee that this coverage will not continue between now and the time when the trial is scheduled, or resume at the eleventh hour before the next trial.  And then the delay and prejudice to Plaintiffs will begin anew. No litigant can control press coverage. And this Court should not allow press coverage to control the timely disposition of this case, at least in the absence of proof that the coverage has irretrievably biased the jury selected to hear it.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court deny BNSF's motion for a continuance or to change venue. BNSF has not demonstrated that a single late-night media report covering exclusively factual matters, has amounted to "pervasive" or "inflammatory" media attention that would result in juror bias. Furthermore, this Court should not determine that such a remedy is required until after *voir dire* of the prospective jurors.

RESPECTFULLY SUBMITTED this 9th day of April, 2024.

                                   McGARVEY LAW

                                   /s/ Jinnifer Jeresek Mariman
                                   JINNIFER JERESEK MARIMAN
                                   *Attorney for Plaintiffs*