IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| JACKSON WELLS, as Personal Representative for the Estate of THOMAS E. WELLS, deceased; and JUDITH HEMPHILL, as Personal Representative for the Estate of JOYCE H. WALDER, deceased,<br><br>                Plaintiffs,<br><br>    v.<br><br>BNSF RAILWAY COMPANY, a Delaware corporation, ROBINSON INSULATION COMPANY, a Montana Corporation for profit,<br><br>                Defendant. | CV-21-97-GF-BMM<br><br>ORDER |

Defendant BNSF moves for the Court to enter judgment as a matter of law against Plaintiffs on Plaintiffs' Strict Liability Claim. (Doc. 358.) Plaintiffs have rested their case in chief.

**LEGAL STANDARD**

A court may resolve an issue against a party when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on [the] issue" after a party has been fully heard on the issue during a jury trial. Fed. R. Civ. P. 50(a). A court may "grant a motion for judgment as a matter of law against the

1

party on a claim" that "can be maintained or defeated only with a favorable finding" on the issue. *Id.*

## DISCUSSION

**II. A common carrier exception to strict liability for abnormally dangerous activities remains limited in scope.**

Restatement (Second) or Torts § 521 (1977) states the following:

The rules as to strict liability for abnormally dangerous activities do not apply if the activity is carried on in pursuance of a public duty imposed upon the actor as a public officer or employee or as a common carrier.

The Montana Supreme Court adopt the common carrier exception articulated by the Restatement in *BNSF Ry. Co. v. Eddy*. 459 P.3d 857, 873-874. The Court previously had predicted that if the Montana Supreme Court were to adopt the common carrier exception, the scope of the exception would prove "limited to actors operating in pursuance of a public duty imposed upon it as a common carrier" and would exclude "activities which [an actor] voluntarily undertook for its own purposes." *Murphy-Fauth v. BNSF Ry. Co.*, No. CV-17-79-GF-BMM-JTJ, 2018 WL 3601235, at *2 (D. Mont. July 27, 2018). The Court in *Murphy-Fauth* relied, in part, on the Ninth Circuit Court's analysis in *In re Hanford Nuclear Rsrv. Litigation*. 534 F.3d 986, 1006 (9th Cir. 2008). The Ninth Circuit determined, in the context of Washington law also adopting the Restatement (Second), that the common carrier exception omits from its coverage abnormally dangerous activities that an actor undertakes "for [the actor's] own purposes." *Id.*

2

*Eddy* arose from some of the same facts at issue in this matter. BNSF's handling and transport of asbestos constitutes an abnormally dangerous activity to which strict liability applies. *Eddy* at 873. The Montana Supreme Court adopted § 521 of the Restatement (Second) of Torts regarding the common carrier exception to strict liability. *Id.* at 873-874. The Montana Supreme Court adopted the analyses on this point contained in *Murphy-Fauth* and *Hanford Nuclear Rsrv.* to conclude, however, that "BNSF's activities other than transportation of vermiculite are not protected by the common carrier exception." *Id.* at 875. In short, Montana law provides that the common carrier exception applies only to *public-duty-imposed* common carrier activities. The common carrier exception does not apply to those activities not required to be taken, but undertaken by a defendant for the benefit of a defendant. *Eddy* explicitly left open the matter of "what those 'other activities' may be[.]" 459 P.3d at 875.

**II. Plaintiffs have made a prima facie case that Defendants stand strictly liable for engaging in abnormally dangerous activities.**

Plaintiffs must submit sufficient evidence, in the first instance, that Defendant carried on an "abnormally dangerous activity," that that activity harmed Plaintiffs, and that the harm was of the type that made the activity abnormally dangerous. *Matkovic v. Shell Oil Co.*, 707 P.2d 2, 3-4 (Mont. 1985) (quoting Restatement (Second) of Torts § 519 (1976)). Plaintiffs also must provide

sufficient evidence that the "activity" at issue falls outside the common carrier exception. *See Eddy*.

Plaintiffs have offered evidence sufficient to survive a motion for judgment as a matter of law that Defendant carried on the abnormally dangerous activity of maintaining a railyard or other BNSF property in such a manner that accumulated asbestos could spread as airborne particulates into the nearby community. *Compare Eddy* at 873 ("BNSF's handling of asbestos under the facts presented here constitutes an abnormally dangerous activity for which BNSF is strictly liable under Restatement (Second) of Torts, § 519"). Plaintiffs have presented evidence that non-party W.R. Grace loaded BNSF cars and provided asbestos-containing vermiculite that BNSF subsequently moved onto, around, and through BNSF property. Plaintiffs have proffered evidence that vermiculite-containing BNSF railcars transited and stopped at BNSF properties in Libby in various states of disorder and disrepair, such that vermiculite particulates left the exteriors and interiors of railcars to alight on BNSF property.

Plaintiffs have presented evidence that once the asbestos-containing material landed on BNSF property, BNSF failed to adequately clean or quarantine the material, instead allowing it to disperse in the air in and around the premises. Nothing under BNSF's duty as a common carrier prevented Defendant from periodically cleaning the railyard, or from improving its facilities to capture

vermiculite dust for safe disposal. Defendant carried on an "abnormally dangerous activity," that is, maintaining uncontained asbestos-containing material open air on its property, caused Plaintiffs harm—asbestos-exposure-related disease—of the type that made the activity abnormally dangerous.

The U.S. District Court for the Northern District of Ohio determined that plaintiffs sufficiently alleged that railroad corporation Norfolk Southern bore strict liability for its actions in the immediate aftermath of the February, 2023 East Palestine, Ohio train derailment. *In re E. Palestine Train Derailment*, 2024 U.S. Dist. LEXIS 43837, *18, 46-49. Norfolk Southern engaged in "abnormally dangerous activities, including transporting over a million pounds of hazardous chemicals and intentionally setting fire to them in a residential neighborhood." *Id.* at *48. The *E. Palestine* court further determined that certain of Norfolk Southern's activities fell outside the scope of the common carrier exception because Norfolk Southern "voluntarily undertook activities for their own purpose[,] namely to *release* and burn vinyl chloride in order to get the derailed cars out of the way to start their trains running through East Palestine again to earn revenue." *Id.* at *49-50 (emphasis added).

Defendant's activity of maintaining asbestos-containing materials on its property in the open air, effectively "release[ing]" asbestos, likewise falls outside the scope of the common carrier exception. *See id.* at *50. Defendant maintained

5

the premises in such a state "for [Defendant's] own purposes" to earn revenue and continue transport operations without delay and was not bound by public duty to act in such a manner. *Id.* at *49-50; *Hanford Nuclear Rsrv.* at 1006; *see Eddy* at 875.

## ORDER

Accordingly, **IT IS ORDERED:**

BNSF's Motion for Directed Verdict Re Strict Liability Claim (Doc. 358) is **DENIED**.

**DATED** this 18th day of April, 2024.

_____
Brian Morris, Chief District Judge
United States District Court