Chad M. Knight
Anthony M. Nicastro
Cole R. Anderson
KNIGHT NICASTRO MACKAY, LLC
304 W. 10th Street
Kansas City, MO 64105
Email: knight@knightnicastro.com
        nicastro@knightnicastro.com
        anderson@knightnicastro.com
Telephone: (720) 770-6235
Facsimile: (816) 396-6233
**ATTORNEYS FOR DEFENDANT
BNSF RAILWAY COMPANY**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| JACKSON WELLS, as Personal Representative for the Estate of THOMAS E. WELLS, deceased; and JUDITH HEMPHILL, as Personal Representative for the Estate of JOYCE H. WALDER, deceased, <br><br> Plaintiffs, <br><br> vs. <br><br> BNSF RAILWAY COMPANY, a Delaware corporation; ROBINSON INSULATION COMPANY, a Montana Corporation for profit; GROGAN ROBINSON LUMBER COMPANY, a Montana Corporation for profit; and DOES A-Z, <br><br> Defendants. | Case No.:  4:21-cv-00097-BMM <br><br> **DEFENDANT BNSF RAILWAY COMPANY'S BRIEF IN SUPPORT OF ITS MOTION IN LIMINE REGARDING PUNITIVE DAMAGES ISSUES** |

**DEFENDANT BNSF RAILWAY COMPANY'S
BRIEF IN SUPPORT OF ITS MOTION IN LIMINE
REGARDING PUNITIVE DAMAGES ISSUES**
PAGE 1

**KNIGHT NICASTRO MACKAY, LLC**
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

COMES NOW, Defendant BNSF Railway Company ("BNSF"), by and through its counsel of record, Knight Nicastro MacKay, LLC, and hereby submits this Brief in Support of its Motion in Limine Regarding Punitive Damages Issues as to the following issues:

1. Preclude Any Evidence or Argument Regarding BNSF's Parent Corporation;

2. Bar Any Evidence or Argument To Punish Defendant For Conduct That Bore No Harm To Plaintiffs;

3. Bar All Evidence and Argument Regarding Extra-Territorial Conduct;

4. Preclude Any Comment About Defendant's Out-of-State Corporate Status;

5. Exclude Evidence Of Net Worth;

6. Limit The Scope Of Argument To The Great Northern's Financials and Conduct In The State Of Montana;

7. Exclude Plaintiffs' Exhibits 59 and 60; and

8. Enforce The Montana Punitive Damages Cap and One Award Rule If Necessary.

## BRIEF IN SUPPORT

## 1. Preclude Any Evidence or Argument Regarding BNSF's Parent Corporation

The Court should preclude Plaintiffs from presenting any evidence or argument concerning BNSF's parent corporation, Berkshire Hathaway, or its CEO Warren Buffett, in Phase II of the punitive damages trial. BNSF is a wholly owned

DEFENDANT BNSF RAILWAY COMPANY'S
BRIEF IN SUPPORT OF ITS MOTION IN LIMINE
REGARDING PUNITIVE DAMAGES ISSUES
PAGE 2

KNIGHT NICASTRO MACKAY, LLC
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

subsidiary and separate corporate entity. The conduct that gives rise to the basis for punitive damages in this claim was conducted by the Great Northern Railroad which was never owned or associated in any way with Berkshire Hathaway or Warren Buffett. This Court should exclude any reference pursuant to Rule 403.

## 2.   Bar Any Evidence or Argument to Punish Defendant For Conduct That Bore No Harm To Plaintiff

Conduct, within this State, must be excluded if it did not affect Plaintiffs. Plaintiffs are not entitled to "punitive damages to punish and deter conduct that [bears] no relation to … [her] harm." *State Farm*, 538 U.S. at 422-23; *see also Philip Morris v. Williams*, 549 U.S. 346, 356-57 (2007) ("a jury may not punish for the harm caused others"). Nor can punitive damages be adjudicated based the merits of "other parties' hypothetical claims against a defendant[.]" *Id.* at 423. Accordingly, such evidence must be excluded because it is irrelevant and would serve no purpose but to inflame the passions and prejudice of the jury.

As a constitutional matter, "[a] defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages. A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business." *State Farm*, 538 U.S. at 422-423. The fact that "a recidivist may be punished more severely than a first offender" does not change that conclusion. *BMW*, 517 U.S. at 577. In assessing a defendant's

DEFENDANT BNSF RAILWAY COMPANY'S
BRIEF IN SUPPORT OF ITS MOTION IN LIMINE
REGARDING PUNITIVE DAMAGES ISSUES
PAGE 3

KNIGHT NICASTRO MACKAY, LLC
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

reprehensibility in the punitive damages context, "it is crucial that a court focus on the conduct related to the plaintiff's claim rather than the conduct of the defendant in general .... [C]ourts cannot award punitive damages to plaintiffs for wrongful behavior that they did not themselves suffer." *Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 797 (8th Cir. 2004).

### 3.      Bar All Evidence and Argument Regarding Extra-Territorial Conduct

This Court should exclude all evidence and argument seeking punishment based on defendant's conduct or practices in other states.  Under *State Farm*, the jury may not punish a defendant for its conduct in other states.  538 U.S. at 421-22. *State Farm* made explicit the territorial limitations on punitive damage awards. The Court ruled that the fact-finder's "reliance upon ... out-of-state conduct evidence" as the basis for the punitive damage award was unconstitutional, because "[a] State cannot punish a defendant for conduct that may have been lawful where it occurred .... [n]or, as a general rule, does a State have a legitimate concern in imposing punitive damages to punish a defendant for unlawful acts committed outside of the State's jurisdiction." *State Farm*, 538 U.S. at 421.  The Court emphasized that "[a] basic principle of federalism is that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders, and each State alone can determine what measure of punishment, if any, to impose on a defendant who acts within its jurisdiction." *Id.* at 422.

**DEFENDANT BNSF RAILWAY COMPANY'S**
**BRIEF IN SUPPORT OF ITS MOTION IN LIMINE**
**REGARDING PUNITIVE DAMAGES ISSUES**
PAGE 4

**KNIGHT NICASTRO MACKAY, LLC**
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

Thus, a state cannot punish a defendant based upon its national policies. In *State Farm*, the plaintiff sought to use evidence of the insurance company's conduct in other states to demonstrate a reprehensible approach to the claims payment at issue. The Supreme Court threw out the punitive damages award, saying that it is constitutionally impermissible to use any singular lawsuit as a platform to "expose and punish" the perceived deficiencies of any company's nationwide operations. *See State Farm*, 538 U.S. at 419-22. In this respect, the Court was following through within the reasoning of *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 572-73 (1996): "While each State has ample power to protect its own consumers, none may use the punitive damage deterrent as a means of imposing its regulatory policies on the entire nation." In fact, it is defendant's "status as an active participant in the national economy [that] implicates the federal interest in preventing individual states from imposing undue burdens on interstate commerce." *BMW*, 517 U.S. at 585. While one State may exercise its power to protect its own citizens, it may not use the punitive damage deterrent as a means of imposing its regulatory policies on the entire nation. *State Farm*, 538 U.S. at 419-22.

In *State Farm*, the Court recognized only one limited exception. Out-of-state conduct "may be probative when it demonstrates the deliberateness and culpability of the defendant's action in the State where it is tortious, but that conduct must have a ***nexus*** to the specific harm suffered by the plaintiff." *State Farm*, 538 U.S. at 422

DEFENDANT BNSF RAILWAY COMPANY'S
BRIEF IN SUPPORT OF ITS MOTION IN LIMINE
REGARDING PUNITIVE DAMAGES ISSUES
PAGE 5

KNIGHT NICASTRO MACKAY, LLC
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

(emphasis added).  If such evidence is admitted, the jury "*must* be instructed … that it may not use evidence of out-of-state conduct to punish a defendant for action that was lawful in the jurisdiction where it occurred."  *Id.* (emphasis added).

Nexus is narrowly construed.  In *State Farm*, for example, the plaintiff contended that all of the insurance company activities put forward at trial stemmed from the same budgetary policies.  *Id.* at 435-36 (Ginsburg, J., dissenting).  The Court nevertheless found no nexus between that conduct and the harm suffered by the plaintiffs. One reason for this restrictive view of the availability of out-of-state evidence is that it would unavoidably lead to a trial within a trial. The plaintiffs would have to prove that the out-of-state conduct was unlawful where it occurred. "Any proper adjudication of conduct that occurred in" another state "in the usual case, would need to apply the laws of their jurisdiction."  *State Farm*, 538 U.S. at 421-22.  The introduction of nationwide policies would be difficult, if not impossible, given that the conduct would have to be adjudicated under the laws of fifty different states.  "A basic principle of federalism is that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders[.]"  *Id.* at 422. The Court should exclude all evidence and arguments regarding defendant's out-of-state conduct.

DEFENDANT BNSF RAILWAY COMPANY'S
BRIEF IN SUPPORT OF ITS MOTION IN LIMINE
REGARDING PUNITIVE DAMAGES ISSUES
PAGE 6

KNIGHT NICASTRO MACKAY, LLC
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

**4.     Preclude Any Comment About Defendant's Out-of-State Corporate Status**

Plaintiffs should also be precluded from making references to the BNSF's corporate status, corporate size or its out-of-state status. The U.S. Supreme Court and the lower courts have long recognized that attempts by counsel to evoke jurors' anti-corporate or sectional biases are wholly inappropriate.  *E.g., New York Cent. R. Co. v. Johnson*, 279 U.S. 310, 319 (1929) ("remarks of counsel * * * tending to create an atmosphere of hostility toward petitioner as a railroad corporation located in another section of the -country, have been so often condemned as an appeal to sectional or local prejudice as to require no comment").  Such arguments "distract the jury from its 'sworn duty to reach a fair, honest and just verdict according to the facts and evidence presented at trial.'"  *Whitehead v. Food Max*, 13 F.3d 265, 277 (5th Cir. 1998).  "When such arguments are used, as here, against out-of-state parties, they 'carry the potential of substantial injustice.'"  *Id.*; *accord Westbrook v. General Tire and Rubber Co*., 754 F.2d 1233 F.2d 1233, 1238 (5th Cir. 1985) (such an "us-against-them plea can have no appeal other than to prejudice by pitting the 'community' against a nonresident corporation.").[1]

---

[1] *See also Seimon v. S. Pac. Transp. Co.*, 136 Cal. Rptr. 787, 790 (1977) (upholding an order for a new trial in punitive damages case, in part, because the plaintiff's counsel made improper comments to deliberately "convey an image of himself and his client as financial underdogs, as 'little guys,' in a court battle against the 'big guy' railroad corporation" that "could have caused the jury to render and inflated verdict").

DEFENDANT BNSF RAILWAY COMPANY'S
BRIEF IN SUPPORT OF ITS MOTION IN LIMINE
REGARDING PUNITIVE DAMAGES ISSUES
PAGE 7

KNIGHT NICASTRO MACKAY, LLC
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

That is particularly so when counsel encourages the jurors to send a message about what their community will or won't tolerate from outsiders.  *E.g., Smith v. Travelers Ins. Co.*, 438 F.2d 373, 375 & n.2 (6th Cir. 1971) (plaintiff's exhortation to "send them back up to Hartford and let them know how we feel about it in Tennessee" was "obviously designed to prejudice the jurors"); *Clement Bros. Co. v. Everett*, 414 S.W.2d 576, 577 (Ky. 1967) (reversal of compensatory award required because jury arguments picturing defendant as "a rich, grasping, foreign corporation running ruthlessly roughshod over the poor, honest, long-suffering citizens of Barren County" were "designed specifically to appeal to and arouse the passions and prejudices of the jury"); *Rockwell Int'l Corp. v. Wilhite*, 143 S.W.3d 604 (Ky. Ct. App. 2003) (noting impropriety of plaintiff's reference to defendants' location in Seal Beach, California, "where everybody has got a tan and a $60 haircut and life is good").

More specifically, courts have ruled that comments tending to show the following are improper due to their prejudicial effect:

- the size of a defendant (*Babcock v. Chespeake and Ohio Ry. Co.*, 404 N.E.2d 265, 276 (Ill. App. Ct. 1980));

- that the corporation is merely a legal entity without a conscience, heart, or soul (*Chrysler Corp. v. Hassell*, 280 So. 2d 102, 106 (Ala. 1973));

- the power or resources of a defendant (*Duke v. Am. Olean Title Co.*, 400 N.W.2d 677, 681 (Mich. Ct. App. 1986)); and

**DEFENDANT BNSF RAILWAY COMPANY'S**
**BRIEF IN SUPPORT OF ITS MOTION IN LIMINE**
**REGARDING PUNITIVE DAMAGES ISSUES**
PAGE 8

**KNIGHT NICASTRO MACKAY, LLC**
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

- the financial motivations for certain actions of a corporation (*Brokopp v. Ford Motor Co.*, 139 Cal. Rptr. 888 (Cal. Ct. App. 1997).

Because there is no place in this trial for such unfairly prejudicial arguments, the Court should preclude plaintiffs from attempting to make them here.

## 5.    Exclude Evidence of Net Worth

The U.S. Supreme Court has materially changed the landscape of punitive damages. Prompted by "concerns over the imprecise manner in which punitive damages systems are administered," the Court has established firm guidelines — based on federal due process principles — with which States must now comply when imposing punitive damages.  *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2002). The Court has (1) adopted guideposts by which the constitutionality of any punitive damage award would be judged, and (2) required the exclusion of evidence which has no connection with the specific harm suffered by the plaintiffs. *See id.* at 417-25; *see also BMW of N. Am. v. Gore*, 517 U.S. 559, 576 (1996). It recently held that "federal constitutional law obligates [the States] to take *some* form of protection [against risks of prejudice] in appropriate cases."  *Philip Morris v. Williams*, 549 U.S. 346, 357 (2007).

The Court in *State Farm* also sent a strong signal to lower courts to act as a gatekeeper and to limit the admissibility of net worth evidence. In this respect, the

Court expressed due process concerns about the admission of net worth evidence because it is highly prejudicial and ordinarily bears no relation to the plaintiff's injury. *See State Farm*, 538 U.S. at 417, 427.

### A.    *Net Worth Evidence is Highly Prejudicial*

"Punitive damages pose an acute danger of arbitrary deprivation of property." *Honda Motor Co. v. Oberg*, 512 U.S. 415, 432 (1994).  With increased "concern about punitive damages that run wild," *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 18 (1991), the U.S. Supreme Court has moved from initial tentative efforts to identify potential limits on punitive damage awards to the elucidation of due process restraints with greater concreteness and force. In every recent case of punitive damages, the Supreme Court has recognized the dangerous and prejudicial nature of evidence of a corporate defendant's net worth.

Beginning with *Pacific Mutual Life Insurance Company v. Haslip*, 499 U.S. 1 (1991), the Court noted that "the factfinder must be guided by more than the defendant's net worth.  [The] plaintiffs do not enjoy a windfall because they have the good fortune to have a defendant with a deep pocket." *Id.* at 22.  Two years later, in *TXO Production Corporation v. Alliance Resources*, 509 U.S. 443 (1993), the Court recognized the high risk of prejudice: "the emphasis on the wealth of the wrongdoer increase[s] the risk that the award may have been influenced by prejudice against large corporations, a risk that is of special concern when the defendant is a

DEFENDANT BNSF RAILWAY COMPANY'S
BRIEF IN SUPPORT OF ITS MOTION IN LIMINE
REGARDING PUNITIVE DAMAGES ISSUES
PAGE 10

KNIGHT NICASTRO MACKAY, LLC
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

nonresident." *Id.* at 464. The Court, however, declined to address the constitutionality of admitting such evidence since TXO had not preserved the point. *See id.* at 466. Then in *BMW*, the Court treated the defendant's financial condition as an impermissible justification for a high punishment award. "The fact that BMW is a large corporation rather than an impecunious individual does not diminish its entitlement to fair notice of the demands that the several States impose on the conduct of its business." *BMW*, 517 U.S. at 591.

In *State Farm*, the Court again acknowledged the constitutionally troubling character of wealth evidence. As the Court explained, "concerns over the imprecise manner in which punitive damages systems are administered" are "heightened when the decisionmaker is presented … with evidence that has little bearing as to the amount of punitive damages that should be awarded." *State Farm*, 538 U.S. at 417, 418. In this respect, the Court repeated, "We have admonished that '[p]unitive damages pose an acute danger of arbitrary deprivation of property … [T]he presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences.'" *Id.* at 417 (citation omitted).[2]

---

[2] As one court observed, if "in *BMW*, the high court threw a lasso around the problem of what it had previously identified as 'punitive damages awards run wild,' in *State Farm* it tightened the noose considerably." *Simon v. San Paolo U.S. Holding Co., Inc.*, 113 P.3d 63, 76 (Calif. 2005) (citation and quotations omitted).

**DEFENDANT BNSF RAILWAY COMPANY'S**
**BRIEF IN SUPPORT OF ITS MOTION IN LIMINE**
**REGARDING PUNITIVE DAMAGES ISSUES**
PAGE 11

**KNIGHT NICASTRO MACKAY, LLC**
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

Lower courts have acknowledged the Supreme Court's concerns about the risk of prejudice that net worth evidence presents. *See Rockwell Intern. Corp. v. Wilhite*, 143 S.W.3d 604, 630-31 (Ky. App. 2003) ("The instant case vividly illustrates the validity of this concern" about the "inherent danger in allowing the admission of such evidence"); *Florez v. Delbovo*, 939 F. Supp. 1341, 1345 (N.D. Ill. 1996) (noting that the Supreme Court "appears to disfavor consideration of the defendant's financial worth and condition in deciding on what level of punitive damages to award."); *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1231 (1991) (citing the "presumption that evidence of a defendant's wealth can induce fact finders to abandon their objectivity and return a verdict based on passion and prejudice.").

## B. *The Introduction of Net Worth Evidence Raises Serious Constitutional Concerns*

As a result of this oft-repeated concern about the risk of prejudice, the U.S. Supreme Court has consistently refrained from including financial condition as a factor to be considered in reviewing a punitive award for excessiveness and, in its most recent decision in *State Farm*, decisively rejected the proposition that a defendant's financial condition is a valid basis for upholding a large punitive award. The Court also stated that a defendant's wealth "bear[s] no relation to the [punitive] award's reasonableness or proportionality to the harm." *State Farm*, 538 U.S. at

DEFENDANT BNSF RAILWAY COMPANY'S
BRIEF IN SUPPORT OF ITS MOTION IN LIMINE
REGARDING PUNITIVE DAMAGES ISSUES
PAGE 12

KNIGHT NICASTRO MACKAY, LLC
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

427.

The evolution of that holding began in *BMW*.  The U.S. Supreme Court there identified three guideposts for courts when evaluating the permissible size of a punitive damages award:  the degree of reprehensibility of the defendant's conduct; the relationship between the punitive damages and the harm to the plaintiff; and the disparity between the punitive damages award and the legislatively established fine for comparable misconduct.  *BMW*, 517 U.S. at 574-85.  Significantly, the Court did not include corporate financial condition as a factor — even though the plaintiff had argued, and the lower court agreed, that the award could be sustained on the ground that it was small in relation to BMW's substantial finances.  *Id.* at 611.  To the contrary, the Court observed that "[t]he fact that BMW is a large corporation rather than an impecunious individual does not diminish its entitlement to fair notice of the demands that the several States impose on the conduct of its business."  *Id.* at 585.  **If a court cannot consider net worth evidence in evaluating a jury award, it is pointless — and indeed error — for a jury to do so.**  *See generally Farmers Ins. Exchange v. Shirley*, 958 P.2d 1040, 1045 (Wyo. 1998) (directing that the *BMW* standards be communicated to the jury in the form of instructions to avoid future reversal because of the denial of due process).

In *Leatherman Tool Group, Inc. v. Cooper Indus., Inc*, 532 U.S. 424, 435, 440, 441-43 (2001), the Court reiterated the three *BMW* guideposts but again omitted

DEFENDANT BNSF RAILWAY COMPANY'S
BRIEF IN SUPPORT OF ITS MOTION IN LIMINE
REGARDING PUNITIVE DAMAGES ISSUES
PAGE 13

KNIGHT NICASTRO MACKAY, LLC
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

corporate financial condition as a relevant consideration — even though the lower courts had relied on the defendant's finances as the primary basis for upholding the $4.5 million punitive verdict.  *See Leatherman Tool Group, Inc. v. Cooper Indus., Inc.*, 1999 WL 1216844, at *1 (9th Cir. Dec. 17, 1999) ("The district court specifically found that the punitive damage award was proportional and fair, given the nature of the conduct, the evidence of intentional passing off, and the size of an award necessary to create deterrence to an entity of Cooper's size and assets. Those findings were supported by the evidence, such that the award did not violate Cooper's due process rights."), *vacated by Cooper Indus., Inc. v. Leatherman Tool Group, In*c., 532 U.S. 424 (2001).

In *State Farm*, the Court not only declined to add financial condition to the guideposts but went substantially further, holding that the lower courts' reliance on "State Farm's enormous wealth" constituted "a departure from well-established constraints on punitive damages."  538 U.S. at 426-27.  Even though Utah law, like other states, had traditionally looked to the defendant's net worth, the Court expressly held that these traditional state-law factors could not be used to trump the *BMW* guideposts: "While States enjoy considerable discretion in deducing when punitive damages are warranted, each award must comport with the principles set forth in *Gore*."  *Id.* at 427.  The Court explained that the defendant's wealth was not relevant, and could not justify an otherwise unconstitutional punitive damages

DEFENDANT BNSF RAILWAY COMPANY'S
BRIEF IN SUPPORT OF ITS MOTION IN LIMINE
REGARDING PUNITIVE DAMAGES ISSUES
PAGE 14

KNIGHT NICASTRO MACKAY, LLC
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

award, because it "bear[s] no relation to the [punitive] award's reasonableness or proportionality to the harm." *Id.* The defendant's wealth had "little to do with the actual harm sustained by the [plaintiffs]." *Id.* The dissent recognized that the majority's statements "unsettle[d]" earlier case law that had seemed to authorize consideration of net worth. *Id.* at 438 n.2 (Ginsburg, J., dissenting).

Two points stand out about the Court's analysis. First, it is clear that net worth evidence does not fit within — and actually conflicts with — the constitutional framework set forth in *BMW*. Due process requires that any punitive damages award be based on the defendant's conduct toward the individual plaintiff and the individual plaintiff's harm, which ordinarily has no connection to defendant's financial condition. *State Farm*, 538 U.S. at 427 (defendant's assets and wealth "bear no relation to the award's reasonableness or proportionality to the harm."). Consideration of net worth is even more inconsistent with the comparative fines guidepost in *BMW* because most criminal or administrative fines do not vary with the wealth of the defendant. *See Kemezy v. Peters*, 79 F.3d 33, 36 (7th Cir. 1996) ("[t]he usual practice with respect to fines is not to proportion the fine to the defendant's wealth").

Second, to ensure compliance with this constitutional framework, the Court in *State Farm* eliminated from the fact finder's consideration entire categories of evidence. For example, the Court held that out-of-state conduct that has no nexus to

DEFENDANT BNSF RAILWAY COMPANY'S
BRIEF IN SUPPORT OF ITS MOTION IN LIMINE
REGARDING PUNITIVE DAMAGES ISSUES
PAGE 15

KNIGHT NICASTRO MACKAY, LLC
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

the harm suffered by plaintiff is inadmissible on the question of punitive damages. *State Farm*, 538 U.S. at 421-22. The Court also held that a defendant's reprehensibility cannot be judged by reference to dissimilar acts. "A defendant's dissimilar acts … may not serve as the basis for punitive damages. A defendant should be punished for conduct that harmed the plaintiff, not for being an unsavory individual or business." *Id.* at 423.

### C. *A Corporation's Net Worth is Irrelevant to the Amount Necessary to Punish and Deter*

Even taking into consideration the purposes of punitive damages, net worth is unnecessary. Punitive damages are universally understood to serve two objectives: "to punish reprehensible conduct and to deter its future occurrence." *Electrical Workers v. Foust*, 442 U.S. 42, 48 (1979) (quotations and citations omitted). The historical rationale for considering net worth was based on a simple model: in non-economic torts, where an individual's motive is based on some personal animus to the victim, as opposed to gain from the transaction, it may be necessary to find a graduated response in terms of punishment. An individual may be willing to pay for the spiteful satisfaction of committing a tortious act, *e.g.,* assaulting or defaming an enemy.[3] Consequently, a greater award of punitive damages award may be needed to deter a wealthy individual from committing a noneconomic tort. In these

---

[3] *See* Dorsey Ellis, *Fairness and Efficiency in the Law of Punitive Damages*, 56 S. Cal. L. Rev. 1, 61 (1982).

DEFENDANT BNSF RAILWAY COMPANY'S
BRIEF IN SUPPORT OF ITS MOTION IN LIMINE
REGARDING PUNITIVE DAMAGES ISSUES
PAGE 16

KNIGHT NICASTRO MACKAY, LLC
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

circumstances, there is, therefore, some basis for permitting the jury to consider the defendant's wealth.[4]

However, this rationale loses its validity when the defendant is not an individual but a corporation being accused of economically motivated torts.  A corporation seeking economic gain can be presumed to act rationally and to avoid a course of conduct where costs exceed its benefits, regardless of the wealth of the corporation.   Thus the Seventh Circuit has observed that "the principle of diminishing marginal utility"—"that losing $1 is likely to cause less unhappiness (disutility) to a rich person than to a poor one—does not apply to institutions as distinct from natural persons."  *Kemezy*, 79 F.3d at 35.

Corporations, as economic actors, are profit-maximizers.  As long as the costs exceed benefits for an individual act and the damages are sufficiently substantial to induce a suit to be brought, the defendant will be discouraged from taking that act, or even a series of similar acts with a similar cost-benefit calculus.  The wealth of the defendant is irrelevant:  it is the potential gain or loss in the individual transaction that will motivate conduct.  *See Punitive Damages: An Economic Analysis*, 111 Harv. L. Rev. 869, 887 (1998) quoted with approval in *Parks v. Wells Fargo Home*

---

[4] *See* A. Mitchell Polinsky & Steven Shavell, Punitive Damages: An Economic Analysis, 111 Harv. L. Rev. 869, 912-14 (1998).

**DEFENDANT BNSF RAILWAY COMPANY'S**
**BRIEF IN SUPPORT OF ITS MOTION IN LIMINE**
**REGARDING PUNITIVE DAMAGES ISSUES**
PAGE 17

**KNIGHT NICASTRO MACKAY, LLC**
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

*Mortgage, Inc.,* 398 F.3d 937, 943 (7th Cir. 2005).  Scholars who have considered the subject generally agree.  As one pair of commentators explains,

> [A] potentially liable defendant will compare the benefits it will derive from an action that risks tort liability against the discounted present expected value of the liability that will be imposed if the risk occurs. Whether a defendant is wealthy or poor, this cost-benefit calculation is the same. * * * The defendant's wealth or lack of it is thus irrelevant to the deterrence of socially undesirable conduct * * *

Kenneth S. Abraham & John C. Jeffries, Jr., *Punitive Damages and the Rule of Law: The Role of the Defendant's Wealth*, 18 J. Legal Stud. 415, 417 (1989).

Because large companies no less than small ones wish to avoid losses, the overall size of a business has little bearing on the way its employees behave.  As the Seventh Circuit has explained:

> General Motors is much larger than Chrysler, and so makes more defective cars, but the goals of compensation and deterrence are achieved for both firms by awarding as damages the injury produced per defective car.  Corporate size is a reason to magnify damages only when the wrongs of larger firms are less likely to be punished; yet judges rarely have any reason to suppose this * * *

*Zazu Designs v. L'Oreal, S.A.,* 979 F.2d 499, 509 (7th Cir. 1992).

The kind of activity at issue in this case, if sufficiently extreme to warrant punitive damages, is not the kind likely to escape punishment.  The injuries alleged by Plaintiffs, mesothelioma and ultimately death, are significant. If liability is warranted, the compensatory damages are typically sufficient to incentivize plaintiffs to sue and, indeed, many people from Libby have.  There is no reason to

DEFENDANT BNSF RAILWAY COMPANY'S
BRIEF IN SUPPORT OF ITS MOTION IN LIMINE
REGARDING PUNITIVE DAMAGES ISSUES
PAGE 18

KNIGHT NICASTRO MACKAY, LLC
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

think that railroad management would not consider its potential liability for compensatory or punitive damages in connection with potential asbestos exposure if it had knowledge that asbestos was present in a product that it transported. Thus, there is no reason to base these damages on corporate wealth.

**6.     Limit The Scope Of Argument To The Great Northern's Financials And Conduct In The State Of Montana**

BNSF's net worth is the product of revenues across the railroad's entire system, including conduct in states other than Montana. However, the conduct that gives rise to this lawsuit was conduct by the Great Northern Railroad. The Great Northern's net worth over the years and financial condition was also the product of revenues derived across other states, though not as many as the BNSF's. To the extent that any of the Great Northern's income is considered, at the very least it must be limited to the income derived from the State of Montana to comply with the legal authority pronounced in *State Farm*.

While punitive damages must legally be limited to actions by the Great Northern, their net worth at the time of Plaintiffs' alleged exposures would also have reflected revenues across its entire railway system, including conduct in other states. In this respect, considering the Great Northern's net worth would run afoul of State Farm's ban on extra-territorial punishment. As the Court stated in *State Farm*, "a basic principle of federalism is that each State may make its own reasoned judgment

DEFENDANT BNSF RAILWAY COMPANY'S
BRIEF IN SUPPORT OF ITS MOTION IN LIMINE
REGARDING PUNITIVE DAMAGES ISSUES
PAGE 19

KNIGHT NICASTRO MACKAY, LLC
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

about what conduct is permitted or proscribed within its borders and each State alone can determine what measure of punishment, if any, to impose on a defendant who acts within its jurisdiction." 538 U.S. at 422. Allowing consideration of defendant's nationwide revenues would run afoul of this principle by allowing the jury to base its punishment on conduct beyond the State's borders and thereby intrude on the prerogatives of other States. *See People v. R.J. Reynolds Tobacco Co.,* 116 Cal. App. 4th 1253 (2004) (reversing a $20 million punitive fine that had been based on the defendant's national figures because it unavoidably punished the defendant for its lawful, gainful commercial activities in other States); *Ace v. Aetna Life Insurance Co.,* 40 F. Supp. 2d 1125, 1133 (D. Alaska 1999) ("the effect of awarding punitive damages based on wealth generated from Aetna's operations outside Alaska raises serious questions regarding the legitimate extent of Alaska's interest in punishing Aetna").

The introduction of evidence concerning Great Northern's net worth and especially BNSF's net worth would only invite constitutional error. If the rationale of the Supreme Court's decisions on punitive damages is thoughtfully applied to this case, net worth evidence is to be excluded here because (1) any relevance is outweighed by the prejudicial dangers or (2) on federal due process grounds.

To the extent any evidence is admitted regarding the financial condition of the Great Northern, that evidence should be limited to the financial condition during the

DEFENDANT BNSF RAILWAY COMPANY'S
BRIEF IN SUPPORT OF ITS MOTION IN LIMINE
REGARDING PUNITIVE DAMAGES ISSUES
PAGE 20

KNIGHT NICASTRO MACKAY, LLC
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

relevant time period for this cause of action.

## 7.     Exclude Plaintiffs' Exhibits 59 and 60

Plaintiffs have listed two of BNSF's financial documents as trial exhibits in this matter. *See* Pls. Trial Ex. 59; Pls. Trial Ex. 60. These exhibits show BNSF's financial status in 2021 and 2022 and were not disclosed during discovery in this matter. Since these exhibits were not produced during discovery, these exhibits should be excluded from any punitive damages hearing for that reason alone. Additionally, BNSF's overall net worth, especially in the years 2021 and 2022, more than forty years after Plaintiffs' latest alleged exposures in Libby, bears no relationship to Plaintiffs' alleged injuries in this matter.[5] Plaintiffs' alleged exposures would have resulted from the conduct of the Great Northern, and thus if evidence of net worth is admitted, which it shouldn't, it should be that of the Great Northern.

The financial disclosure documents on Plaintiffs exhibit list should also not be used as evidence because it contains statements regarding unrelated claims throughout the system that are the result of settlements, verdicts or simply a project based on "recent claim data and trends." Punitive damages are those that relate to the underlying claim for compensatory damages in this case only. *Benefield v. W.R.*

---

[5] *See State Farm*, 538 U.S. at 427; *Zazu Designs v. L'Oreal, S.A.,* 979 F.2d 499, 508 (7th Cir. 1992) ("Corporate assets finance ongoing operations and are unrelated to either the injury done to the victim or the size of the award needed to cause corporate managers to obey the law.").

*Grace & Co.*, 1998 Mont. Dist. LEXIS 773, at *7 (Mont. 19th Jud. Dist. 1998):

> A claim for punitive damages is dependent on an underlying claim for actual damages. Maurer v. Clausen Distributing Co. (1996), 275 Mont. 229, 912 P.2d 195, 202. If the acts which caused the actual damages were done with actual malice or fraud, punitive damages may also be recovered. If Benefield can prove that the conduct underlying the estate's claim for compensatory damages was performed with actual fraud or malice, the jury would be entitled to consider an award of punitive damages.

*See also Weter v. Archambault*, 2002 MT 336, ¶ 40, 313 Mont. 284, 61 P.3d 771:

> Weter claims that Archambaults filed malicious claims and defenses in this and other civil proceedings. However, we agree with the District Court that there was insufficient evidence that Archambaults acted with "actual malice" towards Weter. Nor have we been referred to any record of the tribal or federal cases. Therefore, we conclude that the District Court was not clearly erroneous when it found that Weter was not entitled to an award of punitive damages.

Evidence relating to a party's settlement in a previous action "serve[s] to interject immaterial, prejudicial information into the trial" when it is offered by a party on the issue of damages. *Harrell v. Farmers Educ. Coop. Union*, 2013 MT 367, ¶ 71, 373 Mont. 92, 314 P.3d 920 (holding that the Montana Supreme Court has explained that a settlement amount "rarely has any relevance to the determination of damages at issue in the present trial."). The *Harrell* Court emphasized the strong policy reasons for not allowing evidence of prior settlements to determine damages – "the settlement amount 'does not give the jury a true picture of the reason for the settlement amount' because a party often 'will accept a settlement for reasons which

DEFENDANT BNSF RAILWAY COMPANY'S
BRIEF IN SUPPORT OF ITS MOTION IN LIMINE
REGARDING PUNITIVE DAMAGES ISSUES
PAGE 22

KNIGHT NICASTRO MACKAY, LLC
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

are extraneous to the true issue at hand.'" *Id.* (quoting *Beil v. Mayer*, 242 Mont. 204, 789 P.2d 1229 (1990).

### 8.   Enforce The Montana Punitive Damages Cap and One Award Rule If Necessary

In Montana, "an award for punitive damages may not exceed $10 million or 3% of a defendant's net worth, whichever is less." Mont. Code Ann. § 27-1-220(3). The $10 million cap is enforced even if there are multiple plaintiffs in a lawsuit. The Montana Supreme Court has held that Mont. Code Ann. § 27-1-220(3) affects a substantive right and therefore cannot be applied retroactively. *See Sunburst Sch. Dist. No. 2 v. Texaco, Inc.*, 2007 MT 183, ¶ 220, 338 Mont. 259, 165 P.3d 1079. However, the relevant inquiry is whether or not the claim *accrued* before the statutes effective date of October 1, 2003. *See Id.* (not applying statutory cap to lawsuit that was filed in 2001); *See Seltzer v. Morton*, 2007 MT 62, ¶ 125,  336 Mont. 25, 154 P.3d 561 (Montana Supreme Court affirmed district court's decision that the statutory cap did not require a reduction of the punitive award against the defendant because the plaintiff's claims "accrued prior to the effective date of § 27-1-220(3), MCA.").

In *Seltzer*, the Court expanded on when a claim "accrues" for purposes of § 27-1-220(3), holding that "pursuant to § 27-2-102(1)(a), MCA, a tort claim or cause of action accrues when all elements of the claim or cause exist or have occurred, the

DEFENDANT BNSF RAILWAY COMPANY'S
BRIEF IN SUPPORT OF ITS MOTION IN LIMINE
REGARDING PUNITIVE DAMAGES ISSUES
PAGE 23

KNIGHT NICASTRO MACKAY, LLC
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action." *Seltzer*, ¶ 126. For a negligence claim, the cause of action does not accrue "until damage could be proven," and no damages can be proven "until [the plaintiffs] injuries were manifest." *Orr v. State*, 2004 MT 354, ¶ 76, 324 Mont. 391, 106 P.3d 100.

Here, if the jury finds for the Plaintiffs on liability and malice, any award of punitive damages should be capped at $10 million total between the two Plaintiffs pursuant to Montana law. Any punitive award in excess of $10 million would be a direct violation of Mont. Code Ann. § 27-1-220(3).

Dated this 22nd day of April, 2024.

KNIGHT NICASTRO MACKAY, LLC

By: /s/ Anthony M. Nicastro
    Chad M. Knight
    Anthony M. Nicastro
    Cole R. Anderson
    *Attorneys for Defendant*
    *BNSF Railway Company*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with L.R. 7.1(d)(2), and that the number of words in the brief, excluding caption, certificates of compliance and service, table of contents and authorities, and exhibit index, is less than 6,500 words.

KNIGHT NICASTRO MACKAY, LLC

By: /s/ Anthony M. Nicastro
    Anthony M. Nicastro
    *Attorneys for Defendant*
    *BNSF Railway Company*

**DEFENDANT BNSF RAILWAY COMPANY'S**
**BRIEF IN SUPPORT OF ITS MOTION IN LIMINE**
**REGARDING PUNITIVE DAMAGES ISSUES**
PAGE 25

**KNIGHT NICASTRO MACKAY, LLC**
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of April, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Roger Sullivan
Jinnifer Jeresek Mariman
Ethan Welder
John F. Lacey
McGARVEY LAW
345 First Avenue East
Kalispell, MT 59901
rsullivan@mcgarveylaw.com
jmariman@mcgarveylaw.com
ewelder@mcgarveylaw.com
jlacey@mcgarveylaw.com

Alexandra Bailey Abston *(PHV)*
Rachel Lanier *(PHV)*
Sam Taylor, II *(PHV)*
Lanier Law Firm, P.C.
10940 W. Sam Houston Pkwy N., Ste. 100
Houston, TX 77064
Alex.abston@lanierlawfirm.com
Rachel.lanier@lanierlawfirm.com
Sam.taylor@lanierlawfirm.com
*Attorneys for Plaintiffs*

KNIGHT NICASTRO MACKAY, LLC

By: /s/ Anthony M. Nicastro
     Anthony M. Nicastro
     *Attorneys for Defendant*

DEFENDANT BNSF RAILWAY COMPANY'S
BRIEF IN SUPPORT OF ITS MOTION IN LIMINE
REGARDING PUNITIVE DAMAGES ISSUES
PAGE 26

KNIGHT NICASTRO MACKAY, LLC
304 WEST 10TH STREET
KANSAS CITY, MO 64105
P: (720) 770-6235